HEMAN H. PALMER v. BANK OF ZUMBROTA and Others.

' May 19, 1898.

Nos. 10,961—(65).

**Bank—G. S. 1878, c. 33—Powers of Bank of Issue.**

1. Banks organized under G. S. 1878, c. 33, had, before the passage of Laws 1895, c. 145, the charter powers of banks of issue, whether they issued any circulating notes or not.

**Laws 1885, c. 155 — Constitution — Title of Act — Amendment of Articles of Incorporation.**

2. In so far as Laws 1885, c. 155, attempts to give authority to amend articles of incorporation in other respects than by extending the term of the existence of the corporation, it is unconstitutional and void, because no subject except such extension is expressed in the title of the act.

**Laws 1881, c. 77 — Const. art. 9, § 13 — Two-Thirds Vote of Legislature.**

3. Section 13 of article 9 of the constitution requires that a law for the organization of banks of issue shall be passed by a two-thirds vote of the legislature. Held, Laws 1881, c. 77, which attempts to amend section 18 of said chapter 33, contravenes this constitutional provision and is void, because it was not passed by such two-thirds vote.

**G. S. 1878, c. 33, § 18 — Increase of Capital Stock — Amendment of Articles.**

4. Held, said section 18, as originally enacted, authorized banks organized under said chapter 33 to increase their capital stock by amending the articles of incorporation.

**Same—Formalities Required.**

5. But, as the statute is silent as to the manner in which the amendment shall be made, the same formalities are required with reference to the execution, filing, and publication of the amendment as are required with reference to the original articles of incorporation.

**Same—Failure to Comply with Formalities—Subsequent Creditors —Estoppel of New Stockholders.**

6. Where, in amending the articles of incorporation, the requirements as to these formalities were not complied with, but the amendment was voted for by the stockholders, the increased stock was issued, and held by the new stockholders until, the bank being insolvent, an action was commenced to appoint a receiver for it, under G. S. 1894, c. 76, *held*, as to creditors who have become such on the faith of the new stock, the holders of it are estopped to deny its validity.

**Same—Creditors Relying on Increase of Stock—Presumption.**

7. Creditors are presumed to have trusted the bank on the faith of the increase of the stock from the time that such increase was voted.

**Same—Prior Creditors—Estoppel of New Stockholders.**

8. But, as against creditors who became such before such vote, the new stockholders are not estopped, unless there is in favor of such creditors some special equity which creates such estoppel. On the facts in this case, *held*, there is no such equity.

**Same—Creditors Receiving Stock in Lieu of Claims—Right to Rescind.**

9. *Held*, as against such creditors, the holders of the new stock, who received it from the bank in lieu of claims which they formerly held as creditors of the bank, are entitled to rescind and stand as creditors, not stockholders.

**Action under G. S. 1894, c. 76—Allowance of Claims—Distribution of Fund among Creditors.**

10. The receiver appointed in such an action has no authority to allow or disallow the claims of creditors; and where he allowed some, and paid a dividend thereon, and disallowed others, the court may allow the latter, and order the same dividend to be first paid on them out of the fund derived from the stockholders' double liability, and order the distribution of the balance of that fund to all the creditors pro rata.

**Same—Creditor Failing to Intervene—Right to Dividend.**

11. Order construed, and *held* to provide that creditors who failed to intervene and exhibit their claims should receive a dividend; *held*, error.

**Same—Purchaser of Claims—Consideration—Right to Dividend.**

12. Where the purchaser of a number of the claims of creditors owed no fiduciary relation to the bank or its stockholders, and paid a price which was not so inadequate as to shock the conscience, *held*, he is entitled to a dividend on the full face of the claims.

**Same—Stockholders' Liability—Interest—G. S. 1894, § 5504.**

13. *Held*, the stockholders' double liability is an unliquidated demand; and in an action, under chapter 76, to enforce it, interest should, under G. S. 1894, § 5504, be allowed on the amount of the double liability from the time of filing the decision in the court below, but not before.

**Same—New and Old Stockholders—Stockholders as Creditors—Apportionment of Liability.**

14. *Held*, the amounts which the new stockholders, standing as creditors, may collect from the old stockholders on their double liability, should be applied, as far as necessary, in payment of the amounts for which such new stockholders are liable, to the creditors who became such on the faith of the increase of the stock. The manner of determining the extent of this liability stated.

Action under G. S. 1894, §§ 5900, 5901, in the district court for Goodhue county. The case was tried upon issues arising between the intervening creditors of defendant bank and its stockholders before Crosby, J., whose findings of fact and conclusions of law are stated in the opinion. From an order denying a motion for a new trial, certain of the intervening creditors appealed. Remanded with directions to modify the conclusions of law and order for judgment.

*Smith & Parsons* and *Wright & Matchan*, for appellants.

The stockholders had the power to amend the articles of incorporation by unanimous consent so as to provide for an increase of the capital stock, notwithstanding that there existed no provision for amendment in the organic act, and although the articles of association as originally adopted did not provide for such amendment. The charter of a corporation organized under a general law is the general statute brought into specific operation by the substantial compliance with the terms of the statute on the part of those persons organizing themselves into a body corporate by the adoption of articles of association. 1 Thompson, Corp.

§§ 216, 226. The state having granted its permission to corporations organized under this statute to increase their capital stock, the stockholders could use such methods to avail themselves of the privilege as natural persons might use under similar circumstances. Bailey v. Champlain, 77 Wis. 453; Railroad Co. v Allerton, 18 Wall. 233; Barry v. Merchants, 1 Sandf. Ch. 280; White Water v. Vallette, 21 How. 414, 424; McKiernan v. Lenzen, 56 Cal. 61; Thompson v. Lambert, 44 Iowa, 239; 1 Beach, Priv. Corp. § 44; Bissell v. Michigan, 22 N. Y. 258. The objection that certain stockholders did not consent cannot be raised by those who did consent. Heath v. Silverthorn, 39 Wis. 146; Handley v. Stutz, 139 U. S. 417. It was not even necessary that the full amount of the proposed increase should be subscribed. Farnsworth v. Robbins, 36 Minn. 369; Masonic Temple Assn. v. Channell, 43 Minn. 353. Express power to amend the articles of association is given by Laws 1885, c. 155, and was strictly pursued. The act is constitutional; and, even if unconstitutional, stockholders who have acted thereunder will be estopped to assert the invalidity of the statute. A general law applicable to all corporations which neither grants nor takes away a banking right or privilege is not within the constitutionl restriction upon legislative action. In re Koetting, 90 Wis. 166.

Even presuming this law is unconstitutional, persons who have held themselves out to the world as stockholders in a corporation and have held and owned shares in it will be estopped from claiming that the law under which they are organized is unconstitutional. 2 Morawetz, Priv. Corp. § 759; Elliott, Corp. § 36; Building & Loan Assn. v. Chamberlain, 4 S. D. 271; Olson v. State Bank, 67 Minn. 267; Wright v. Lee, 4 S. D. 237; Freeland v. Pennsylvania, 94 Pa. St. 504; McClinch v. Sturgis, 72 Me. 288; Estey v. Runnels, 55 Mich. 130; Wentz v. Lane (Pa. St.) 3 Atl. 878; Smith v. Sheeley, 12 Wall. 358; Daniels v. Turney, 102 U. S. 415, 421; Central v. Alabama, 70 Ala. 121; McDonnell v. Alabama, 85 Ala. 401. Even presuming that Laws 1881, c. 77, is constitutional, failure to comply therewith is an irregularity and, the authority to increase the stock actually existing in some form, and the increase having been made in good faith on the assumption that the legal right to do so had been acquired, and the stock having been actually issued, delivered, ac-

cepted and paid for, the stockholder will be estopped to deny his liability to the corporation or its creditors, when he has acquiesced in the irregular or illegal acts. Elliott, Corp. § 36; Minnesota G. L. E. Co. v. Denslow, 46 Minn. 171; 2 Morawetz, Priv. Corp. § 624.

It is said that the existence of three things will make a corporation de facto: (1) Capacity to become a corporation; (2) a good-faith attempt to form a corporation; and (3) user of the right. Taylor, Priv. Corp. § 145; Evanson v. Ellingson, 67 Wis. 634; Martin v. Deetz, 102 Cal. 55. And when these conditions exist there is a corporation de facto, even though there has been an utter failure to comply with the requirements of the law under which there has been an attempt to organize. Spring Valley v. San Franscisco, 22 Cal. 434, 440; Bakersfield v. Chester, 55 Cal. 98; Foster v. Moulton, 35 Minn. 458; State v. Steele, 37 Minn. 428. Stockholders who have acted and held themselves out to the world as such, and permitted their stock to be considered as an actual component part of the capital stock, are estopped as against creditors of the corporation to set up irregularities in the creation of their stock. Upton v. Hansbrough, 3 Biss. 417; Gaff v. Flesher, 33 Oh. St. 107; Hickling v. Wilson, 104 Ill. 54; Chubb v. Upton, 95 U. S. 665; Upton v. Jackson, 1 Flipp. 413; Payson v. Stoever, 2 Dill. 427; Payson v. Withers, 5 Biss. 269; Corwith v. Culver, 69 Ill. 502; Wheelock v. Kost, 77 Ill. 296; McCarthy v. Lavasche, 89 Ill. 270; Hager v. Cleveland, 36 Md. 476; Hammond v. Straus, 53 Md. 15; Eaton v. Aspinwall, 19 N. Y. 119; Abbott v. Aspinwall, 26 Barb. 202; McHose v. Whceler, 45 Pa. St. 32; Slocum v. Providence, 10 R. I. 112; Farnsworth v. Robbins, 36 Minn. 369; Pullman v. Upton, 96 U. S. 328. Such objections are available only on the part of the state in a direct proceeding against the corporation. Elliott, Corp. § 36; Casey v. Galli, 94 U. S. 673, 680; Building & L. Assn. v. Chamberlain, supra; Stofflet v. Strome, 101 Mich. 197; St. Paul Land Co. v. Dayton, 42 Minn. 73; Columbia Electric Co. v. Dixon, 46 Minn. 463; Scheufler v. Grand Lodge, 45 Minn. 256; Wright v. Lee, supra.

The fact that the full amount of the increased stock was not subscribed or paid in cash is not available to respondents as a defense in this proceeding. Masonic Temple Assn. v. Channell, supra; Farnsworth v. Robbins, supra. Failure to comply with the provis-

ions of this law is an irregularity not available as a defense against creditors. Delano v. Butler, 118 U. S. 634; Aspinwall v. Butler, 133 U. S. 595; Pacific Nat. Bank v. Eaton, 141 U. S. 227; Thayer v. Butler, 141 U. S. 234; Butler v. Eaton, 141 U. S. 240. Where the abstract power to increase the capital stock of a corporation is granted by the statute under which it is formed, and the increased stock has been held out as a component part of the capital of the corporation, and the creditors have acted or failed to act, believing that the stock had been legally increased, parties who have held the new stock in the hope of receiving dividends have acted as stockholders, voted the stock, or held office in the corporation by virtue thereof, will not be permitted to escape liability as stockholders on the ground that the stock was illegally created. Veeder v. Mudgett, 95 N. Y. 295; Handley v. Stutz, 139 U. S. 417; Larede v. Stevenson, 66 Fed. 633; Kampmann v. Tarver, 87 Tex. 491; Grangers Ins. Co. v. Kamper, 73 Ala. 325. The true rule of law in this class of cases should be that courts of equity will not aid a stockholder to escape liability to creditors by enforcing the common-law prohibition against corporate action unless the stockholder can show that the reason on which the common-law rule is founded holds good in his individual case. 2 Morawetz, Priv. Corp. (2d Ed.) §§ 648, 653, 692.

The court erred in holding that the so-called new stockholders are entitled to stand as creditors to the amounts they have severally paid for the stock, in money or by surrender of their claims against the bank. The holder of claims against an insolvent corporation cannot set them off against a liability on his stock in a suit by an assignee in bankruptcy. Sawyer v. Hoag, 17 Wall. 610; Sanger v. Upton, 91 U. S. 56; Scammon v. Kimball, 92 U. S. 362; County of Morgan v. Allen, 103 U. S. 498. There is no rule of law or equity which entitles stockholders in a contest between themselves and the creditors either to receive a credit for money paid for the stock or to have it repaid them out of the assets of the corporation. Banigan v. Bard, 134 U. S. 291; Scovill v. Thayer, 105 U. S. 143, 153.

Respondents, having assented to and acquiesced in the decision and action of the receiver, are barred from sharing in the distribution of the fund created out of the corporate assets of the bank. In re Minnehaha D. P. Assn., 53 Minn. 423. In order to rescind re-

spondents must have acted promptly on the discovery of the facts entitling them to rescind and before the insolvency of the corporation. Elliott, Corp. § 176. Conant's complaint does not state a valid claim and must be disallowed because he did not allege what he paid for these claims, and because courts of equity will not permit persons to speculate on a fund which it creates. A person cannot "for a mere song" purchase claims against an insolvent corporation and enforce those claims against the stockholders of the corporation. Hospes v. Northwestern Mnfg. & C. Co., 48 Minn. 174, 199; Mississippi & M. R. Co. v. Cromwell, 91 U. S. 643; Randolph v. Quidnick Co., 135 U. S. 457; Thompson v. Meisser, 108 Ill. 359, 365; Gauch v. Harrison, 12 Ill. App. 457; Bulkley v. Whitcomb, 49 Hun, 290; Holland v. Heyman, 60 Ga. 174; Hollister v. Hollister, 2 Keyes, 245. Interest can be computed from the time when the amount due from the stockholders becomes liquidated. Thompson, Liab. Stockh. § 374; Burr v. Wilcox, 22 N. Y. 551; Mason v. Alexander, 44 Oh. St. 318; Handy v. Draper, 89 N. Y. 334; Wheeler v. Millar, 90 N. Y. 353; Cleveland v. Burnham, 64 Wis. 347; Bank v. Warren, 52 Mich. 557; Casey v. Galli, 94 U. S. 673. The new stockholders are liable for all the debts of the bank, whether incurred before or after the creation of their stock. Olson v. Cook, 57 Minn. 552; Gebhard v. Eastman, 7 Minn. 40 (56).

*Chas. W. Bunn* and *Chas. C. Willson*, for respondents.

The bank had no common-law or implied authority to increase its capital stock. Unless there was a statute authorizing the increase, the new stock was void. Morawetz, Priv. Corp. (2d Ed.) §§ 434, 761; 1 Cook, Stockh. (3d Ed.) §§ 281, 292; Scovill v. Thayer, 105 U. S. 143; Sutherland v. Olcott, 95 N. Y. 93; New York v. Schuyler, 34 N. Y. 30; Salem v. Ropes, 6 Pick. 23; Sewell's Case, L. R. 3 Ch. App. 131, 139. A mere irregularity in issuing stock which the statute permits to be issued is insufficient to vitiate the stock; but if issued contrary to law and without authority under the statute, the stock is void and the holder cannot be made to pay the double liability imposed by G. S. 1878, c. 33, § 21. He is not a stockholder. 1 Cook, Stockh. §§ 281, 288, 292; 2 Morawetz, Priv. Corp. §§ 763, 849; Winters v. Armstrong, 37 Fed. 508; American v. Boston, 139 Mass.

5; Stephens v. Follett, 43 Fed. 842; New York v. Schuyler, supra; Scovill v. Thayer, supra. If the bank had no authority to issue the new stock, then the defendants who took it are still creditors of the bank to the amount of the claims they surrendered in payment for it. The fact that the whole $20,000 of new stock was never subscribed rendered the subscriptions invalid as against the bank and its prior creditors. The cases in support of this position are collected and cited in Eaton v. Pacific Nat. Bank, 144 Mass. 260, 274.

There is no estoppel of the new stockholders. 1 Cook, Stockh. §§ 292, 298. Such new shares are void, although the holder take part in corporate meetings and serve as an officer or agent of the bank. No person is entitled to give the bank credit on the faith of shares which it had in law no authority to issue. 2 Morawetz, Priv. Corp. (3d Ed.) §§ 765, 849; Scovill v. Thayer, supra; 1 Cook, Stockh. (3d Ed.) § 292. Creditors who trusted the bank before the attempted increase have no greater rights as against the new stockholders than has the bank itself. The purchasers have the same right to rescind the purchase and avoid the double liability that they would have if they were suing the bank in equity to cancel the stock and recover the purchase money. First Nat. Bank v. Gustine Mining Co., 42 Minn. 327; 2 Morawetz, Priv. Corp. (3d Ed.) §§ 763, 832, 833, 849; Scovill v. Thayer, supra; Handley v. Stutz, 139 U. S. 417, 435. Interest cannot be recovered upon the double liability prior to the entry of judgment in this action determining what per cent. of that liability will be required to pay the debts. The amount must be liquidated before it will bear interest. Casey v. Galli, 94 U. S. 673–678; Munger v. Jacobson, 99 Ill. 349; Cole v. Butler, 43 Me. 401; Sackett v. Blake, 3 Rich. Eq. 225; 1 Cook, Stockh. § 225.

*Geo. J. Allen*, for respondent Conant.

CANTY, J.

This is the second appeal in this action. See 65 Minn. 90, 67 N. W. 893. The action has since been tried by the court without a jury.

From the findings of fact it appears that on May 16, 1893, the bank suspended payment, and closed its doors. The amount of its

capital stock was then $25,000. Thereafter, on May 26, the creditors of the bank signed an instrument in writing, extending the time of the payment of their claims for one year, and thereupon, on the same day, the bank opened its doors, and resumed business. On June 12, all of the stockholders of the bank except two met at the office of the bank, and passed a resolution purporting to amend the articles of incorporation, so as to provide that the amount of the capital stock might be increased from time to time to an amount not exceeding in the aggregate $100,000, by a vote of the holders of the majority of the stock in favor of such increase. The court finds that the two stockholders who were not present "subsequently assented to and ratified the proceedings had at said meeting." On July 15 the stockholders met at the same place, and passed another resolution, purporting to increase the stock from $25,000 to $45,000. These resolutions were each attested by the secretary of the corporation, and recorded on the books of the bank, but were never signed by the stockholders, and, as we understand the findings, were "published, filed, and recorded with the register of deeds of said Goodhue county, and filed with the state superintendent of banks." Of the $20,000, proposed increase of capital stock, only $19,500 was ever subscribed for, and this was issued on the same day, July 15. Most of it was issued to creditors, who took it in lieu of their claims against the bank.

When the bank closed its doors on May 16, it held about $90,000 of the unmatured notes and securities of the Northwestern Guaranty Loan Company of Minneapolis. This company had suspended payment shortly before, and the bank reopened its doors and resumed business under the belief that the loss on this paper would not exceed fifteen or twenty thousand dollars. But, in the course of time, it was discovered that the loss on this paper was total, and that ever since the failure of the loan company the bank was totally and hopelessly insolvent. This fact becoming apparent, the bank did but little business after it opened its doors. It kept its doors open until January 16, 1894, when this action was commenced, and a receiver appointed.

The trial court held that the new stock is void, and that the holders of the same are not liable as stockholders to the creditors, but

are themselves entitled to participate as creditors in the distribution of the assets of the corporation, and in the amount realized on the stockholders' double liability. Judgment was ordered in favor of all the creditors, including such new stockholders, and against the old stockholders on their double liability. From an order denying a new trial, a large number of the creditors appeal.

1. One of the grounds on which the court held the new stock void is that it was issued without authority of law. Section 13 of article 9 of the constitution authorizes the legislature to pass a general banking law by a two-thirds vote. This provision applies only to a law for organizing banks of issue. Allen v. Walsh, 25 Minn. 543; International Trust Co. v. American Loan & Trust Co., 62 Minn. 501, 65 N. W. 78, 632. The defendant bank was organized under G. S. 1878, c. 33, and every bank organized under that chapter, at least after the amendment of 1869 (Laws 1869, c. 85), and before the passage of Laws 1895, c. 145, had the charter powers of a bank of issue, whether it issued any circulating notes or not. The original articles of incorporation of this bank made no provision for increasing its capital stock, and it is contended by respondents that in such a case there was no statutory authority under which such a bank could increase its stock.

2. It is conceded by all parties that Laws 1885, c. 155 (G. S. 1894, § 3400, was not passed by a two-thirds majority; but, even if it had been, it is unconstitutional and void in so far as it attempts to give authority to amend articles of incorporation in other respects than by extending the time of the existence of the corporation, for the reason that no other subject is expressed in the title of the act. The title is "An act to provide for the extension of the term of corporations." The act provides that "any corporation * * * may amend its articles of incorporation in any respect which might have been made part of said original articles." Clearly, this provision is not covered by the title.

3. Laws 1881, c. 77, attempts to amend section 18 of said chapter 33, so as to allow, under certain restrictions, an increase of the capital stock of any bank organized under chapter 33. But it is admitted by all parties that said chapter 77 was not passed by a two-thirds vote of the legislature, and, on examination of the jour-

nals of both houses, we find this to be true. It requires a two-thirds vote to amend the law as well as to pass it originally, and therefore said chapter 77 was never passed, and is unconstitutional and void.

4. We have been referred to no other statutory provision which it is claimed authorizes an amendment of the articles of incorporation so as to provide for an increase of the capital stock of such a bank, unless said section 18 of chapter 33, as originally passed, authorized such an amendment. This section reads as follows:

"Sec. 18. It shall be lawful for any person or association of persons organized under the provisions of this chapter, by his or their articles of association, to provide for an increase of their capital stock, and of the numbers of such association, from time to time, as they may think proper."

Respondents contend that this section authorizes an increase in the capital stock only when the original articles of incorporation provide for such an increase in the future. We are of the opinion that, even though the original articles do not so provide, the section authorized a subsequent amendment of the articles so as to provide for an increase of the capital stock.

Section 14 of chapter 33, as originally enacted, provides that

"No change shall be made in the articles organizing such bank whereby the rights, remedies or securities of existing creditors shall be in any manner impaired."

This evidently contemplates changes or amendments in the articles; but there is no section or provision in the act, unless it is section 18, which expressly authorizes any change or amendment. Again, section 11 provides that the articles of incorporation shall specify:

"Third. The amount of capital stock, and the number of shares into which the same shall be divided."

But, if the articles may provide for a future increase of the stock without specifying definitely that the stock shall be increased, the time of such increase, and the amount thereof, it will be impossible to tell from the face of the articles what the amount of the stock is at any particular time. If it is left discretionary with the stock-

holders or directors to increase the amount of the capital stock at any time without amending the articles, then the articles may or may not specify the amount of the capital stock. But the statute says that they shall specify the amount; and it is the usual legislative policy to require the articles to fix and limit definitely the amount of the capital stock. Then we are of the opinion that the legislature intended to provide, by section 18, that the amount of the capital stock might be increased by an amendment of the articles "from time to time."

5. But this statute is wholly silent as to the method of proceeding to make the amendment. In such a case the same formalities that were required with reference to the execution, filing and publication of the original articles when such a corporation was organized will be required with reference to the amendment. The statute provides that the original articles shall be signed and acknowledged by all the members, but the proposed amendment was not signed by any one except the secretary, and was not acknowledged at all. There are other formalities which were required as to the original articles which were not complied with as to the amendment. Then it is plain that the statute was not complied with in the attempt that was made to increase the amount of the capital stock.

6. But, in our opinion, it does not follow from this that the new stock is void for all purposes. As to creditors who have become such on the faith of the new stock, the holders of the same are estopped to deny its validity. The cases of Veeder v. Mudgett, 95 N. Y. 295, and Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, are in point here. In the former case it is said in the opinion, at page 310:

"But where, as in the present case, the abstract power [to increase the capital stock] did exist, and there was a way in which the increase could lawfully be made, and the creditors could, without fault, believe that the increase had been lawfully effected and the necessary steps had been taken, there the doctrine of estoppel may apply, and the increased stock be deemed valid as against the creditors who have acted upon the faith of such increase."

This is quoted with approval in the latter case, and both cases

are cited with approval in Olson v. State Bank, 67 Minn. 267, 69 N. W. 904.

7. The creditors are presumed to have trusted the bank on the faith of the increase of the stock from the time that such increase was voted. Handley v. Stutz, supra. The creditors who have appealed hold in the aggregate claims to the amount of only $674.41, that were incurred since the resolution to increase the stock was passed on July 15.

8. But, as against the creditors who became such before this resolution was passed, the holders of the new stock are in a position to assert its invalidity, unless there is in favor of these creditors some special equity which estops these new stockholders. It is claimed by these creditors that before the bank reopened its doors on May 26, they extended the time of payment of their claims on the faith of·the increase of the capital stock; and therefore, as to them also, the new stockholders are estopped to deny the validity of the new stock. The trial court finds that on said day those creditors signed an instrument in the following form:

"Zumbrota, Minnesota, May 26, 1893.
"For value received, the undersigned, creditors of the Bank of Zumbrota, hereby agree to extend the time of payment of our claims against said bank for twelve months from this date."

The court further finds that the same was executed "relying on the statement of some of the officers of the bank that its capital stock would be increased $20,000," if the instrument was signed. It does not appear what officer or officers of the bank made this statement, or that they had any authority to represent or bind the bank or its stockholders in making it. Such officer or officers did not have the power to amend the articles so as'to increase the capital stock. It does not appear that the new stockholders had any notice or knowledge of this statement when they subscribed for the new stock. It is not found that the statement was made fraudulently or with intent to deceive, or that such statement is any part of the contract by which the time of payment was extended. The extension was made before the resolution to increase the stock was passed. Then we cannot hold that these creditors are in a position to invoke any such estoppel.

9. It is contended by appellants that the court erred in allowing the new stockholders to stand as creditors.

Appellants cite Scovill v. Thayer, 105 U. S. 143, 152, as authority for the proposition that after the corporation has become bankrupt, and the rights of creditors have attached, a dividend cannot be allowed for money paid for void stock issued while the corporation was a going concern. Whether or not the point was there correctly decided we shall not consider. While it seems that a few of the new stockholders paid some small amounts in cash when the new stock was issued, counsel have not specified, the names or amounts or portions of the record in which we may find them, and we do not propose to examine the large record in this case for the purpose of ascertaining all the facts as to these matters. Then we shall treat the case as if the whole consideration for the new stock was the pre-existing indebtedness of the corporation to the new stockholders. We are of the opinion that the creditors who took the new stock for the amount of their claims are entitled to stand as creditors as against the other old creditors and the old stockholders. A rescission of the contract must place them in statu quo, and restore to them the character of creditors.

As an additional ground for relieving the new stockholders, and permitting them to stand as creditors, the court found that there was a mutual mistake of fact in this: That all parties, at the time the new stock was subscribed for, believed the bank to be solvent, and the new stockholders were induced so to believe by the false and mistaken misrepresentations of one of the officers of the bank, who had investigated the affairs of the insolvent loan company, and that by reason of this mutual mistake the new stockholders were entitled to rescission. Whether the court was warranted in making these findings we need not consider, as, in any event, the effect of this alleged mutual mistake in relieving the new stockholders is not any greater than the effect of the illegality in failing to comply with the statute in increasing the stock.

10. The receiver appointed to sequester the corporate assets, and distribute them among the creditors, assumed to allow and disallow the claims of creditors. He disallowed the claims of the new stockholders for which they took the new stock, and allowed the

claims of other creditors, and paid them a dividend of 20 per cent. thereon. The trial court allowed both classes of claims, as aforesaid, and ordered that the former class receive, first, a 20 per cent. dividend, and that both classes share alike out of any balance remaining for distribution after paying this dividend. This is assigned as error. The holding is correct. The court, and not the receiver, is the proper party to allow or disallow these claims, and it was not necessary for the creditors in the former class to appeal from the receiver's action. Neither does it alter the case that the dividend paid by the receiver was paid out of the corporate assets, and that the former class of creditors is to be put on an equality with the latter, by being paid out of the fund to be derived from the stockholders' liability.

11. The trial court attached to his finding, as a part of the same, Exhibit No. 6, being a list of the creditors who failed to intervene in this action or exhibit their claims, and the amount due each of these creditors. Appellants contend that the court ordered judgment in favor of these creditors also. The order for judgment, which is somewhat vague and general, is susceptible of that construction, and should be so modified as to order judgment in favor of those creditors only who have appeared and exhibited their claims, and whose claims have been allowed.

12. After the receiver had paid the 20 per cent. dividend as aforesaid on the claims specified in said list No. 2, the intervenor, Conant, purchased all of these claims from the original holders thereof, and paid them therefor 15 per cent. of the original face of the claims. The court below ordered judgment for Conant for the full amount of the balance due on these claims. This is assigned as error. On the authority of the cases hereinafter mentioned, appellants contend that he should not be allowed to speculate on these claims.

In Randolph v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655, it was held that a court of equity will not aid the assignee of a speculative claim to enforce the same, where the disproportion between the price paid for the claim and its face value is so great as to shock the conscience. This, in substance, was the holding of this court in Hospes v. Northwestern Mnfg. & C. Co., 48 Minn. 174,

199, 50 N. W. 1117, and was also the holding in Mississippi & M. R. Co. v. Cromwell, 91 U. S. 643. No such disproportion exists in this case.

In Thompson v. Meisser, 108 Ill. 359, 365, Gauch v. Harrison, 12 Ill. App. 457, and other cases, it is held that, as to the stockholders' liability, the stockholders stand in a fiduciary relation to each other, similar to that of one partner to another, and that, if one stockholder buys up claims against the corporation at a discount, he can be allowed only what he paid for them, in a suit to enforce the stockholders' liability. Conant was not an officer or stockholder of this bank; but it is claimed by appellants that he was furnished the money to buy these claims by two of the officers and stockholders, and holds the claims for them. On this point the court has made no finding, and has not been requested to do so. For this reason, the question cannot be reviewed on appeal.

13. In the order for judgment the court ordered that no interest should be computed on the amount of each stockholder's liability prior to the time of the entry of judgment. This is assigned as error. The amount due from any one stockholder cannot be determined except by a proceeding in equity, under chapter 76, to ascertain the total amount of indebtedness, and apportion it among all the stockholders. Until this is determined, the liability does not become liquidated, and no interest accrues on it. Thompson, Liab. Stockh. § 374. But, under our statute, interest accrues on an unliquidated claim, as well as on a liquidated one, from the time of rendering the verdict or decision. G. S. 1894, § 5504. Therefore the court should have allowed interest from the time of filing its findings and order for judgment.

14. One question remains: What is the extent to which the new stockholders are liable to the new creditors who have appealed? That liability must be determined on the same basis as if the new stockholders were liable also to the old creditors, who did not take new stock in lieu of their claims. If the total aggregate double liability of such old and new stockholders equaled or exceeded the amount of such old and new claims, and if we could say, in advance of the entry of judgment and issue of execution, that all the old and new stockholders are solvent, so that such total liability would

pay all of such claims in full, the liability of the new stockholders to the new creditors could be ascertained by apportioning pro rata the liability for the new claims between the old and the new stockholders. Thus, there are $25,000 of the old stock and $19,500 of the new stock, and the new stockholders would be required to pay $195/_{445}$ of $674.41, the amount of the new claims.

We can with reasonable certainty say, in advance, that the new stockholders are solvent for the purposes of this case, because the amount which they, standing as creditors, will collect from the old stockholders, should be applied, so far as necessary, in payment of the amount which they, standing as such new stockholders, should pay to the new creditors. But we cannot say, in advance of the issue of execution, that the old stockholders are solvent. Harper v. Carroll, 66 Minn. 487, 69 N. W. 610, 1069.

Let us suppose that, after the return of execution against the old stockholders, it were found that all of them, except a number holding in aggregate only $10,000 of stock, were insolvent, and that the double liability on this $10,000 of old stock and on the new stock equaled or exceeded the amount of such old and new claims; then the apportionment of the liability for the new claims should be made between these solvent old stockholders and the new stockholders, and the new stockholders would in that case be liable for $195/_{295}$ of the $674.41 due on the new claims; the solvent old stockholders should pay the balance, the other $100/_{295}$ of this $674.41. But if such total, aggregate, double liability of the solvent old stockholders and the new stockholders does not equal the amount of such old and new indebtedness, then the new stockholders should pay proportionately less. For instance, if such aggregate liability should equal only 80 per cent. of such total claims, then the new stockholders should pay only 80 per cent. of the amount of liability above apportioned against them. It must be remembered that, in making this apportionment as between the old and new claims, none of the old claims for which new stock was taken must be considered.

It is admitted by all parties, and the court in effect finds, that, if the new stockholders are allowed to stand as creditors as against the old stockholders, the total double liability of the latter does

not equal the aggregate amount of claims to be satisfied out of that liability. Therefore it is proper to order judgment and execution against the old stockholders for the full amount of their double liability and interest thereon since the filing of the findings of the trial court. The judgment should further provide that, on the return of execution, the court shall, on proper equitable principles, determine the amount which the new stockholders shall pay to the new creditors; that this amount shall be deducted from the share of such new stockholders so collected on execution; and that, for the balance due the new creditors, they shall participate equally with the other creditors in the distribution of the amount so collected on execution; and that the whole amount so collected shall be distributed under the order of the court.

The action should be remanded to the court below, with directions to modify its conclusions of law and order for judgment in conformity with this opinion. So ordered.