## CLAGETT v. DULUTH TP.

(Circuit Court of Appeals, Eighth Circuit. February 19, 1906.)

No. 2,246.

1. MUNICIPAL CORPORATIONS—ACTION ON BONDS—DEFENSES.

An injunction restraining a municipal corporation or township from paying certain bonds issued by it, granted in a suit by a taxpayer, in itself, constitutes no defense to an action on such bonds by a holder, who was not a party to such suit.

2. STATUTES—REVISION OR COMPILATION—GEN. ST. MINN. 1878.

Gen. St. 1878 of Minnesota, the preparation and publication of which were authorized by the Legislature, but without expense to the state, and which was made competent evidence of the laws of the state by a subsequent act, is merely a private compilation, and not a legislative revision, and when the verity of any part thereof is questioned the court looks to the original enactments.

3. TOWNS—POWER TO ISSUE BONDS—MINNESOTA STATUTES.

Under Act Minn. March 7, 1867 (Laws 1867, p. 58, c. 31), entitled "An act to authorize the supervisors of the several organized townships of this state and those that may be hereafter organized to issue bonds or orders for the purpose of building bridges in their respective towns," and Const. Minn., art. 4, § 27, which provides that "no law shall embrace

more than one subject, which shall be expressed in its title," the power of supervisors in issuing bonds is limited by the title of the act to the single purpose of building bridges, although such limitation is not expressed in the body of the act which confers the power to issue bonds generally when authorized by two-thirds of the legal voters present and voting at an election called for the purpose; and bonds purporting to be issued thereunder and reciting that they were issued "for the purpose of constructing and improving roads and bridges of said town as authorized by more than a two-thirds vote of all the votes cast at a special township meeting called for that purpose," show their invalidity on their face and the recital imparts notice thereof to all purchasers.

4. SAME—CURATIVE ACT—EXCEPTIONS.

Laws Minn. 1903, p. 387, c. 267, confirms the validity of all bonds previously issued by any township for the purpose of constructing or repairing roads or bridges under authority of a prior act authorizing the issuance of bonds for building bridges only, with a proviso that it shall not apply to any pending suit or to any bonds, "where the legality of the same * * * has been questioned in any action or proceeding in any court." *Held*, that bonds which were involved in a pending suit by a taxpayer against the township to restrain their payment on the ground of their illegality, were within the proviso, and not legalized by the act.

In Error to the Circuit Court of the United States for the District of Minnesota.

This was an action instituted by Clagett, plaintiff in error, to recover on three bonds, each for $1,000 issued by the township of Duluth, defendant in error. The bonds recited on their face that they were issued "for the purpose of constructing and improving roads and bridges of said town." The town defended the action on the ground that it had no authority to issue bonds for the purpose specified, and that by reason of such want of authority it had been enjoined by a decree of the district court of St. Louis county, Minn., in a suit instituted by a taxpayer against it, from paying the same. The trial court sustained the defense, and the case is brought here for review.

Horace S. Oakley (S. T. Harris and Charles B. Wood, on the brief), for plaintiff in error.

H. A. Dancer (C. O. Baldwin, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The injunctive order in the taxpayer's suit in itself constitutes no defense to this action. Clagett was not a party to that suit and is not affected by its result. City of Mankato v. Barber Asphalt Paving Co., 142 Fed. 329.

Did the town have authority to issue the bonds? Plaintiff claims it did by virtue of section 114 of chapter 10 of the General Statutes of 1878 (Gen. St. 1894, § 1031), which provides:

"That the Board of Supervisors of the organized townships of this state, or those that may hereafter be organized, be and the same are hereby authorized and fully empowered to issue the bonds or orders of their respective towns, with coupons attached, in such amounts and at such periods as they may be directed by two-thirds of all the legal voters present and voting at any legally called meeting held for that purpose."

This language taken by itself would seem to confer power to issue bonds for any reasonable purpose, subject only to the requirement of a favorable vote of two-thirds of the voters present, and voting at a

meeting called for the purpose of authorizing them. But does this section conclusively express the law of Minnesota on the subject? It is contended that the General Statutes of 1878 is not a revision of the laws, but only a private compilation, and that reference to the original legislation discloses that the town exceeded its power in issuing the bonds in question. The intention of the Legislature, as disclosed by legislation touching the General Statutes of 1878, must therefore be ascertained.

The act of February 20, 1878 (Laws Minn. 1878, p. 118, c. 67), after referring to the public acts then in force including the Revised Statutes of 1866, enacts in section 2 that:

"Said statutes shall be compiled and published by a commission consisting of George B. Young and such others as he may associate with him, under the supervision and direction of the Governor, within one year from the passage of this act."

And in section 3 that:

"All expenses of the preparation and publication of said Statutes shall be borne by the party publishing them and the State shall not be liable in any way for any of the expenses of this work."

The work appears to have been done and submitted to the Legislature in 1879. By the act of March 8, 1879 (Laws Minn. 1879, p. 71, c. 67) the Legislature, in section 1, declared that the edition so submitted "shall be competent evidence of the several acts and resolutions therein contained in all courts of this state without further proof of authentication," and in section 2 enacted that said compilation shall be known and cited as "General Statutes, 1878." No other legislation is found from which it can be concluded that Young's edition was ever adopted or recognized by the state as a revision of its laws. The provision for a private commission to compile and publish the statutes at the expense of the publisher; the legislative designation of the work as a "compilation"; the absence of any express enactment or other distinct recognition of the compilation as conclusive evidence of the laws of the state, such as is generally found in legislation relating to revisions, seem to deny to these statutes the force and effect of a legislative revision of the laws. This conclusion is in harmony with the treatment of this compilation by the Supreme Court of Minnesota. The language employed in the act of March 8, 1879, supra, is not essentially different from that employed in the act of February 27, 1895 (Laws Minn. 1895, p. 723, c. 310), giving force and effect to the compilation of the General Laws of Minnesota, by Harry B. Wenzel, known as the "General Statutes of 1894." His compilation was made "competent evidence of the several acts and resolutions therein contained" quite the same as Young's compilation was.

If either of these compilations constituted revisions of laws of the state, then (except in cases of doubt or ambiguity) no resort could be had to original statutes to modify them. They would constitute final and conclusive expressions of the law. U. S. v. Bowen, 100 U. S. 508, 513, 25 L. Ed. 631; Cambria Iron Company v. Ashburn, 118 U. S. 54, 57, 6 Sup. Ct. 929, 30 L. Ed. 60. But the Supreme Court

of Minnesota has in many cases, quite inconsistent with plaintiff's theory, ignored the compilations of 1878 and 1894, and examined original enactments to ascertain, among other things, whether the title of the original act was broad enough to embrace the subject of the enactments. State ex rel. Keith v. Chapel, 63 Minn. 535, 65 N. W. 940; Palmer v. Bank of Zumbrota, 72 Minn. 266, 75 N. W. 380; Hamilton v. Minneapolis Desk Manf'g Co., 78 Minn. 3, 80 N. W. 693, 79 Am. St. Rep. 350; Lien v. Board of County Commissioners, 80 Minn. 58, 82 N. W. 1094; Loper v. State, 82 Minn. 71, 84 N. W. 650. In these and other cases which we have examined, it obviously did not occur to that court to treat the compilations in question as revisions. They were recognized as competent or prima facie evidence of what the law was, but when their verity was questioned, the court recurred to the original enactments for the truth.

In State v. Smith, 35 Minn. 257, 28 N. W. 241, that court, in speaking of the "General Statutes of 1878" says:

"These words refer to Young's compilation of statutes made in that year, which was never adopted or enacted as a law, or revision of the laws, although it was * * * made competent evidence of the several acts and resolutions therein contained in all courts of this state."

In Hall v. Leland, 64 Minn. 71, 66 N. W. 202, that court, in holding that "an act to amend" * * * a stated section and chapter of the "General Statutes of 1878" was sufficiently specific within the constitutional requirement that the subject of the act should be expressed in the title, put its conclusion on the ground of public policy and convenience, suggested by the fact that the people as well as the Legislature had come generally to look upon those statutes as original enactments and that reference to them would afford practically the same definite information ·concerning the subject of legislation as would be the case if they had been original enactments. Moreover, it does not escape observation that in this case the court refers to the "General Statutes of 1878" as a "mere compilation." The statutes of 1878 not constituting a legal revision of the laws but only prima facie evidence of them we are not concluded by the language employed in them. Their verity being challenged, we may and should resort to the original legislation for accuracy.

The act of March 7, 1867 (Laws Minn. 1867, p. 58, c. 31), supposed to be transcribed in section 114 of chapter 10 of the General Statutes of 1878 (Gen. St. 1894, § 1031), has the following title which does not appear in the compilation:

"An act to authorize the Supervisors of the several organized townships of this State and those that may be hereafter organized, to issue bonds or orders for the purpose of building bridges in their respective towns."

Section 1 authorizes, in the language already quoted from section 114, the board of supervisors to issue bonds of the town. No limitation of the purposes for which the bonds may issue is found in the first or any other section of this act.

Section 2 (page 59) provides as follows:

"No bonds or orders issued under authority of this act shall be so issued * * * or the proceeds thereof be used or appropriated for any purpose whatever other than that specified in this act."

Here is found an assumption that the act in some of its provisions had specified the purposes for which bonds might be issued.

Section 27, art. 4, of the Minnesota Constitution ordains that "No law shall embrace more than one subject, which shall be expressed in its title." Because of this constitutional inhibition the title of an act necessarily limits and restricts the operation of the enacting clause and may be resorted to for aid in the interpretation of the statute. Black on Interpretation of Laws, 175; Cooley's Constitutional Limitations, *149; State ex rel. Stuart v. Kinsella, 14 Minn. 524 (Gil. 395); Hamilton v. Minneapolis Desk Manf'g Co., 78 Minn. 3, 80 N. W. 693, 79 Am. St. Rep. 350. Considering, therefore, the act of March 7, 1867, in the light of its title, we find adequate scope for the operation of section 2. The title specifies the purpose, namely, "building bridges." Nothing more.

The conclusion is irresistible that a fair and reasonable interpretation of the act of March 7 limited towns to the issue of bonds only for the purpose of building bridges. This act was amended by the act of March 3, 1868 (Laws Minn. 1868, p. 87, c. 50), but this amendment does not aid the plaintiff. It provides in substance, that the notice for the town meeting to authorize the issue of bonds shall particularly specify the object for which the meeting is called. It is recited in the body of the bonds sued on that they were issued "for the purpose of constructing and improving roads and bridges of said town, as authorized by more than a two-thirds vote of all the votes cast at a special township meeting called for that purpose." This recitation discloses that the bonds were issued for the unauthorized purpose of constructing and improving roads and improving bridges as well as for the sole purpose for which the town was authorized by law to issue them, of "building bridges." It also discloses that there is substantial merit in the defense of these bonds. The legal voters of the town, who alone were empowered to authorize their issue had no opportunity to vote on the proposition, whether the town should incur the indebtedness and issue its bonds for the sole purpose permitted by law. The town meeting was called to consider the proposition of issuing bonds for the fourfold combined purpose just stated, and on this proposition the vote appears to have been taken.

The mere fact that the bonds were voted for and issued for one lawful purpose out of the four purposes specified in the call and recited on the face of the bonds, does not justify the issue of the bonds for the combined purposes mentioned. Elyria Gas & Water Co. v. City of Elyria, 57 Ohio St. 374, 49 N. E. 335. They were issued without a legal vote of the township, and for purposes unauthorized by law and are void. There is no question in this case concerning the rights of innocent purchasers. The plaintiff does not stand in that attitude. He purchased the bonds with the nullifying recitation on their face, and was bound to take notice thereof.

The Legislature of Minnesota, in 1903, passed a confirmatory act. Laws 1903, p. 387, c. 267.

Section 1 provided that:

"All bonds which, prior to the passage of this act, have been issued and sold by any organized town or township in this state for the purpose of constructing, altering, or repairing roads in said town, or for the purpose of constructing, altering, or repairing roads and bridges in said town * * * under authority of the act of March 7, 1867, as amended by the act of March 3, 1868, are hereby declared to be in all things confirmed * * * and are hereby declared to be valid and binding obligations against the town or towns issuing the same."

Under this act plaintiff claims that his bonds are validated and become legal obligations of the defendant. There is a proviso to this act in the following words:

"Provided further, that this act shall not apply to any suit or action now pending relative to the legality of any bonds so issued or to any bonds where the legality of the same, either as to principal or interest, has been questioned in any action or proceeding in any court."

The taxpayer's suit appears to have been instituted against the town in 1899. It unequivocally challenged the validity of the bonds in suit, both as to principal and interest, and resulted, on April 2, 1903, in a final decree adjudging the bonds void and restraining the defendant town and its officers from paying the same. We entertain no doubt that this suit "questioned" the legality of the bonds within the meaning of the mentioned proviso. Argument is made by plaintiff's counsel that the validity of the bonds must have been "questioned" in some action or proceeding to which the bondholders were parties in order to bring the bonds involved in it within the terms of the proviso. We fail to appreciate the force of this argument. The words employed must be given their natural meaning, and no interpolation should be made unless necessary to express the legislative intent. The proviso clearly and explicitly excepts from the operation of the act, any bonds which have been "questioned in any action or proceeding in any court." It does not prescribe in what manner or how effectually they should be questioned.

The taxpayer's suit seems to have been pending at the time the curative act was under consideration. It doubtless was in the legislative mind and one of the actions or proceedings contemplated by the proviso.

Finding no error in the record of the trial court, its judgment is affirmed.