MISSISSIPPI & RUM RIVER BOOM COMPANY *vs.* JOHN S. PRINCE and another.   (Defendants' Appeal.)

August 10, 1885.

**Plaintiff's Duty as to Logs Destined below St. Anthony Falls.**—The plaintiff's charter, (Sp. Laws 1867, *c.* 134, § 10, as amended, Sp. Laws 1877, *c.* 175,) construed, and *held* to impose no other or further duty upon the plaintiff, in respect to logs destined below the Falls of St. Anthony, than to separate and turn them loose in the Mississippi river, and conduct them, by means of a sheer-boom, west of the pier at the head of the dam above the falls, and below the suspension bridge, as directed by section 14 of the charter.

**Same—Compensation.**—The charge for boomage in such cases allowed by the charter is not alone for turning the logs over the falls, but also to compensate the company for its outlays and expenses in maintaining booms, and for its services in receiving, driving, and assorting logs in conformity with the requirements of the charter.

**Constitution—Subject of Act not Expressed in Title.**—In March, 1879, the legislature passed an act entitled "An act relating to the Mississippi Boom Corporation," (Sp. Laws 1879, *c.* 316,) another and separate organization, which was given jurisdiction on the river below the Falls of St. Anthony.   In addition to provisions relating to the powers and duties of such corporation, the act embraces a separate section (section 6) which imposed additional duties upon the plaintiff corporation in respect to logs going below the falls.   *Held* that, as respects such section, the act is unconstitutional; the subject-matter thereof not being included or expressed in the title of the act.

**Corporation—Estoppel—Legislation Procured by Officers.**—A corporation is not bound or estopped by the acts of individual corporators or officers in procuring legislation not authorized or ratified by the corporate body.

**Same—Adoption of Legislation.**—In order to bind a corporation by acts alleged to amount to an acceptance or adoption of new legislation affecting its charter, it must clearly appear that such acts were done in pursuance and recognition thereof.

This is an appeal by defendants from an order of the district court for Ramsey county, denying their motion for a new trial after a trial be-

fore *Wilkin*, J., and a jury, and verdict of $4,303.09 in their favor. A statement of the pleadings is contained in the report of the last preceding case, which was an appeal by the plaintiff from an order denying its motion for a new trial.

Defendants' motion was made upon a bill of exceptions, from which it appears that on the trial there was evidence that plaintiff's charges for boomage from 1879 for all logs turned over St. Anthony Falls were at the rate of 30 cents per thousand; that logs turned out and conducted west of the piers, as provided in section 14 of plaintiff's charter, would be carried thence by the current over St. Anthony Falls at a point or place where the United States had, prior to 1880, constructed an apron and other works at great expense to protect and preserve the falls from being washed away; that in the year 1879 the United States government constructed a sluice-way for the passage of logs over the falls, but that logs, when conducted west of the pier, as provided in said section 14 of plaintiff's charter, if then left to the action of the current, would not be carried to the sluice-way but over the apron and works so put in by the government, and that other and further artificial works were necessary to be constructed and maintained between the pier and the sluice-way in order to conduct the logs to the sluice; that in March, 1880, the United States obtained an injunction from the United States circuit court, restraining the plaintiff and the defendants from turning out and allowing logs to run over the apron and government works, and forbidding plaintiff and defendants from turning out or running logs in such portion of the river that the same would go over the falls, unless provision was made for conducting them to the head of and into the sluice, which injunction has been operative from and after July 28, 1880.

It also appears that the defendants offered evidence to show that in the years 1880, 1881, and 1882, they were engaged in the manufacture of saw-logs into lumber, at West St. Paul, and had a mill capacity to manufacture over 10,000,000 feet in each year, and depended upon getting logs from up the Mississippi above the Falls of St. Anthony, and could get them from no other source, and that during those years they had over 10,000,000 feet of saw-logs come down the river into and through plaintiff's main boom at Minneapolis,

which were duly scaled and were destined for defendants at their mill, and that they had no other logs and could not get any from any other source to supply their mill. Also, that these facts were known to plaintiff when the logs came into its possession, and that the defendants notified the plaintiff that they wanted the logs over the falls.

Defendants also offered evidence to prove that it involved more labor and expense to assort and turn out logs to come over the falls, as required by section 14 of the plaintiff's charter, than to turn them out into the ponds or trail booms at Minneapolis, which evidence was excluded by the court as incompetent, irrelevant, and immaterial, and defendants excepted. It also appears that the court having ruled that Sp. Laws 1879, c. 316, § 6, was unconstitutional and void, the defendants offered evidence to show that the plaintiff, through its officers and agents, was instrumental in procuring and approving the incorporation of section 6 into the act, the purpose of the testimony being to raise an estoppel against plaintiff's denying the constitutionality or validity of section 6. The testimony taken on behalf of the defendants on this point, was stricken out on plaintiff's motion as incompetent, irrelevant, and immaterial, and as not tending to estop plaintiff from alleging the unconstitutionality of section 6.

The court refused the following instruction requested by defendants: "By section 6, of chapter 316, Special Laws 1879, the plaintiff is required, when notified thereto as provided in that section, to run logs to the head of the sluice-way constructed to conduct them over the falls, and is allowed as boomage 30 cents per 1,000 feet. Now, if the plaintiff charged and is seeking to collect boomage in this action from the defendants under said section, it is bound by the provisions thereof, and it was its duty to conduct defendants' logs to the head of the sluice constructed by the United States to take them over the falls; and if boomage was thus charged, the plaintiff cannot now change its position, and claim boomage under its charter, and thereby escape the burdens imposed upon it by said section 6."

On plaintiff's request the court charged the jury as follows:

"It never has been the duty of said plaintiff to conduct or provide for the conducting of such logs to or into said sluice-way upon said

v.34m—6

falls to any further extent than by turning them loose out of its main boom, and constructing a shear boom so that they would run west of the pier at the head of the dam in the middle of the Mississippi river, below the suspension bridge.

"Section six of chapter 316 of the special laws of 1879 is unconstitutional and void upon its face.

"The plaintiff has never been bound by or obligated to act under or pursuant to the provisions of section six of chapter 316 of the special laws of 1879.

"The defendants cannot maintain any counterclaim against plaintiff upon the ground of any alleged breach, by plaintiff, of duties claimed' to be imposed upon it by section six of chapter 316 of the special laws of 1879."

The court also further charged the jury that in respect to the logs which were to go over the falls, the plaintiff was only required to arrest and turn them loose in the river and conduct them west of the pier at the head of the dam below the suspension bridge referred to in section 14 of its charter, and was entitled to boomage under its charter on the logs it turned out to go over the falls.

*J. M. Gilman* and *C. D. Kerr*, for appellants.

*J. M. Shaw*, for respondent.

VANDERBURGH, J.[1]   The principal questions in this case arise upon the construction of certain sections in the respective charters of the "Mississippi & Rum River Boom Company" and of the "Mississippi Boom Corporation."

1. Sp. Laws 1867, c. 134, § 10, as amended by Sp. Laws 1877, c. 175, authorized the plaintiff boom company to maintain a boom or booms on the Mississippi river, from the head of Nicollet island, above the Falls of St. Anthony, to a certain point above, therein described, and authorized and required such corporation "to receive and take the entire control and management of all logs which are to be conveyed to any point on the Mississippi river below the main sorting boom of said corporation above the head of said Nicollet island," and "the said corporation shall drive and convey all such

---

[1] Berry, J., took no part in the decision of this case.

logs to the main boom above the head of Nicollet island," "and, when requested by the owners thereof, on sufficient notice being given, to turn the same out of the main boom and into the ponds below said main boom on either side of the river, above, at, or opposite the head of Nicollet island, *or over the Falls of St. Anthony.*"

Section 14 provides that "in case any owner of logs shall notify said company to turn his logs over the falls, said company shall, upon the payment of the boomage and charges thereon, as hereinbefore established, turn such logs loose; and it shall construct and maintain a shear-boom, so that said logs will run west of the pier at the head of the present dam in the middle of the Mississippi river below the suspension bridge, but said company shall do no other act or thing in respect thereto." By section 11 "said corporation is entitled to the following compensation or boomage:  *  *  *  For all logs or other timber turned over the Falls of St. Anthony, the sum of fifty cents for each thousand feet."

The court charged the jury in this case, under the exception of the defendants, that, in respect to logs which were to go over the falls, "the plaintiff was only required to arrest and turn them loose in the river, and conduct them west of the pier at the head of the dam below the suspension bridge referred to in section 14 of its charter, and was entitled to boomage under its charter on logs so turned out to go over the falls."

We think the court correctly construed these provisions of the charter as to the nature of the duty of the plaintiff to be performed below the head of Nicollet island. The charge for boomage, however, was not alone for turning the logs over the falls, but to compensate the company for its outlay in maintaining booms, and for its *quasi* public services in receiving, handling, driving, and assorting logs coming within its jurisdiction, which extends for a long distance upon the river. *Osborne* v. *Knife Falls Boom Co.,* 32 Minn. 412. The only duty which was required to be performed by the plaintiff below the head of Nicollet island was to conduct such logs as were going below, west of the pier at the head of the dam, so as to float in the current outside the ponds, and not to be run into or remain within the same. The fact that in 1879, and long subsequent to plaintiff's

charter, it became necessary, in consequence of the action of the United States government, that such logs should pass over the falls through a sluice provided for such purpose, did not impose any additional duty upon the plaintiff in respect to such logs.

2. The act conferring certain powers upon the Mississippi Boom Corporation, (Sp. Laws 1879, c. 316,) is entitled "An act relating to the Mississippi Boom Corporation." The first five sections relate to the powers and duties of such corporation, which is given jurisdiction upon the river from the point where the southern line of Ramsey county, extended westerly, intersects the river, to the Falls of St. Anthony. And section 6 of the act provides that "owners of logs, timber, or other material, desiring that the same shall go over the Falls of St. Anthony, may give notice in writing to the Mississippi & Rum River Boom Company, ten days before such logs, timber, or material shall reach the boom limits of said last-named company, that they desire the same to go over said falls, specifying in such notice the log-marks of such logs, timber, or material, and thereupon the Mississippi & Rum River Boom Company shall, as soon as practicable after said logs shall reach their booms, assort and turn the same to the upper end of the sluice-way above the falls,  *  *  *  and shall for such services be entitled to receive the sum of thirty cents per thousand feet, and shall have the same lien therefor as is provided for in its charter."

The trial court held this section invalid and unconstitutional because its provisions relate to matters not included within the title of the act and are not embraced therein. This section imposes an additional duty upon the plaintiff in respect to logs going below the falls, not required by its charter, and to that extent, if valid, practically operates as an amendment of such charter. The title of the act refers solely to a particular boom corporation expressly named therein, while section 6, under consideration, regulates the business of another corporation in respect to the delivery of logs going over the falls, not merely of the corporation named in the act, but of all other persons; and this works an important and material change in the method of delivering logs going over the falls.

The constitutional provision in question is: "No law shall embrace more than one subject, which shall be expressed in its title." (Const., article 4, § 27.) This provision is to have a practical and liberal construction, for it is manifest that a law may embrace but one subject and yet include many provisions and details which it would be inconvenient and unnecessary to refer to in the title. It is sufficient if the title fairly and reasonably expresses the subject, or is sufficiently broad or comprehensive to embrace the several provisions relating to or connected with the subject. *State* v. *Kinsella,* 14 Minn. 395, (524;) *City of St. Paul* v. *Colter,* 12 Minn. 16, (41;) *Matter of Mayer,* 50 N. Y. 504.

We do not deem it necessary to discuss the question whether the subject-matter of the section in controversy is so incongruous with and foreign to that of the preceding sections that the act may be said to include more than one subject, but simply whether the title is broad enough to include the provisions of that section, and to express the subject-matter of the act taken as a whole. If the provisions of section 6 are broader than the title, and foreign to it, then the act is to be deemed unconstitutional as respects such section. The object of this constitutional provision is twofold: one to prevent the combination in one act of several subjects, which ought to be separately acted on by the legislature, and separately considered on their merits; and the other, to advise the legislature and the public of the nature of impending legislation, so that those interested may inform themselves of the whole subject-matter, or any branch of it, or details connected with it. *Harris* v. *People,* 59 N. Y. 599. Where, for instance, the title of an act announces its subject to be an act to amend the charter of a city, it may be presumed to include any necessary or proper provisions in relation to the organization or powers of the municipality. *City of St. Paul* v. *Colter, supra.* On the other hand, an act relating, as indicated by its title, to specified streets or portions of a city, or other special matter connected with it, or to one town or locality, could not be held to embrace provisions affecting other interests or localities, though the legislation in respect to each be of the same general character. *Matter of Sackett Street,* 74 N. Y. 95, 103; *Matter of Paul,* 94 N. Y. 497, 506. We think the court

was warranted in holding that the whole subject of the act in question was not embraced in the title. In *City of St. Paul* v. *Colter*, which is relied on by the appellants, the provision of the city charter in relation to the collection and disbursement of the city taxes by the county treasurer was held embraced within the subject of the act, and covered by its general title, inasmuch as such provision related to a municipal matter, and the treasurer was *pro hac vice* a collector of taxes for the city.

3. But it is insisted that the plaintiff consented to and has acted under the act of 1879 in question, and is estopped from raising any objection to its validity. The evidence tends to show that individual members or officers of the corporation aided in procuring or assented to the passage of the act as it stands, including the provisions of section 6. It does not appear, however, that they had any authority to act for the corporation in that behalf, or that there has ever been any corporate action by plaintiff, authorizing, assenting to, or ratifying such legislation. These unauthorized acts of the officers or members were not, therefore, binding upon it. *Baldwin* v. *Canfield*, 26 Minn. 43, 59. Neither did its voluntary consent to accept boomage on logs going over the falls, at the rate designated in section 6, work an estoppel upon plaintiff to deny the obligation of that section. In order to bind a corporation by acts alleged to amount to an adoption or acceptance of new legislation affecting its charter, it must clearly appear that they were done in pursuance and recognition thereof. *Com.* v. *Cullen*, 13 Pa. St. 133. The reduced boomage which it consented to take was within the amount allowed by its own charter, and was consistent with it, and such as it was thereby at its pleasure authorized to fix. It was not such an unequivocal act of adoption and recognition of the legislation as the law requires. The plaintiff took nothing under the act, and it might consent to compromise rates of boomage without assuming the burdens imposed.

There was no error on the part of the trial court in rejecting defendants' proposed instructions to the jury on this or other questions in the case, and the order denying a new trial should be affirmed.