STATE *ex rel.* IRA P. SHISSLER *vs.* JEROME E. PORTER.

Argued April 25, 1893. Decided May 19, 1893.

**Special Laws Held Unconstitutional.**
> In so far as they relate to the term of office of the judge of the municipal court for the city of Mankato, Sp. Laws 1887, ch. 8, Sp. Laws 1889, ch. 12, and Sp. Laws 1891, ch. 47, are unconstitutional and void.

**The Subject not Expressed in the Title.**
> The subject of the attempted legislation is not expressed in the titles to these laws, as required by the Constitution, art. 4, § 27.

On April 14, 1893, Ira P. Shissler, presented in this court his petition stating in substance that on April 4, 1893, he was elected Judge of the Municipal Court of Mankato, a court created by Sp. Laws 1885, ch. 119. That he had received a certificate of election and had qualified as Municipal Judge, but was prevented by Jerome E. Porter, the prior incumbent, from taking possession of the office. A writ of *Quo Warranto* issued, and the respondent showed cause April 25, 1893. The Act creating the court provided that the Municipal Judge should hold his office for the term of three years.

Porter was elected Judge in April, 1888, and re-elected in April, 1891. This term would not expire until April, 1894, but the relator claimed that the term of the office had been changed to two years, by Sp. Laws 1891, ch. 47, subch. 2, § 2, and expired April 10, 1893. The respondent claimed that this Act, so far as it attempted to change his term of office, was invalid, because that subject was not expressed in its title, as required by the Constitution, art. 4, § 27. He also claimed that Sp. Laws 1887, ch. 8, and Sp. Laws 1889, ch. 12, in so far as they attempted to alter the term of office of the Municipal Judge, were invalid for the same reason. This was the only question discussed on the argument.

*Lorin Cray* and *Wm. N. Plymat*, for relator, cited *Supervisors of Ramsey Co.* v. *Heenan*, 2 Minn. 330, (Gil. 281;) *State* v. *Cassidy*, 22 Minn. 312; *State ex rel.* v. *Smith*, 35 Minn. 257; and *Johnson* v. *Harrison*, 47 Minn. 575.

*Pfau & Young*, for respondent.

COLLINS, J. The relator seeks by this proceeding to obtain immediate possession of the office of judge of the municipal court of the city of Mankato; he having been elected to that office at the city election held April 4, 1893. His claim is that the term of office of the respondent—who was last elected to the same office at the election held in 1891, duly qualified, and has since discharged the duties—expired on Monday, the 10th day of April, 1893. The question is whether the respondent's term of office is two or three years.

The facts are that the city of Mankato was chartered and organized long prior to the year 1885. A municipal court for the city was created by Sp. Laws 1885, ch. 119; the same being an act of the legislature entitled "An act to establish a municipal court in the city of Mankato, Blue Earth county, Minnesota." This was an independent act, providing for the establishment of the court, and defining its powers and jurisdiction, and was similar in all respects to like acts which have passed the legislature from time to time under the authority of that section of the constitution which provides for certain named courts, and for the creation of "such other courts, inferior to the supreme court, as the legislature may * * * establish by a two-thirds vote." It is conceded that this act has

never been referred to directly by the legislature, except in an amendatory act now known as Sp. Laws 1887, ch. 78, the amendment relating simply to the salary of the judge of the court.

By the original enactment, Sp. Laws 1885, ch. 119, § 2, it was provided that the qualified electors of the city of Mankato, at the city election to be holden on the first Tuesday in April of that year, and on the day of the city election every third year thereafter, should elect a judge of the court, who should hold his office for the term of three years, and until his successor was elected and qualified. By section 3 it was provided that there should also be elected a special judge of said court, whose manner of election, term of office, powers, duties, and qualifications, should be the same as those of the judge. Both of these officers were required to be residents and qualified electors of the city, persons learned in the law, and duly admitted to practice as attorneys in this state.

By the terms of sections 2 and 3, vacancies in either of these offices were to be filled by appointment by the governor; the appointees to be qualified persons, and to hold office until the next annual city election occurring more than thirty days after the vacancy should have happened, when a judge or a special judge, or both, as the case might be, should be elected for a term of three years. We call attention to some of these provisions for the purpose of showing the painstaking care of the legislature when establishing the court, which is a court of record, having civil jurisdiction in cases where the amounts in controversy do not exceed $500. Its criminal jurisdiction is that of a justice of the peace, and is exclusive in the city.

The respondent was first elected in April, 1888. There was no attempt made to elect a municipal judge from that time until the annual city election of 1891, when he was re-elected, as before stated. So it will be seen that respondent held the office for three years under his first election.

In the year 1887 an act was passed, (Sp. Laws 1887, ch. 8,) entitled "An act to amend and consolidate the charter of the city of Mankato, state of Minnesota." This was really a new charter for the city. We find no reference to the municipal court, or the judges thereof, except in subch. 2, § 2, where it is provided that the elective officers of the city shall be a mayor, a municipal judge, treasurer,

and city recorder. The recorder and treasurer are to be elected for two years, and "all other elective officers * * * shall hold their offices for one year, or until their successors are elected and qualified." There was also a provision which had the effect to continue in office all persons then holding office under the prior charter until the expiration of the terms for which they were elected or appointed.

It is claimed by the relator that by this act the term of office of municipal judge was reduced from three years to one, and that, when respondent was elected in 1888, he was elected for but one year.

In the year 1889 various amendments were made to the act of 1887, by an act entitled "An act entitled 'An act to amend the charter of the city of Mankato in the state of Minnesota,'" now Sp. Laws 1889, ch. 12. In section 2 of the act the elective officers of the city —mayor, municipal judge, etc.—were named, the same as in section 2 of the statute of 1887. An election was provided for the year 1889, and for every two years thereafter, and the term of office of every officer elected under the act was to commence on the second Tuesday of April of the year in which he was elected, and was to continue for two years. The only substantial change in the amendment of 1889, relating to elections or terms of office, was to substitute biennial for annual elections, and to make the terms of office for the respective officers two years, instead of one. It will have been noticed that a municipal judge was not elected in 1889.

In the year 1891, Sp. Laws 1891, ch. 47, another act was passed, entitled "An act to amend chapter 8 of the Special Laws of the State of Minnesota for the year 1887, entitled 'An act to amend and consolidate the charter of the city of Mankato, state of Minnesota,' as amended by chapter 12 of the Special Laws of the State of Minnesota for the year 1889, entitled 'An act entitled an act to amend the charter of the city of Mankato, in the State of Minnesota.'"

This was, in substance, as was chapter 8, *supra*, a new charter. An election was provided for the first Tuesday in April, 1891, and every two years thereafter. The elective officers were to be a mayor, municipal judge, a special judge, treasurer, and recorder. These officers, it was provided, should be elected for two years, and until their successors were elected and qualified. The municipal court

was not mentioned in this act, nor were the judges thereof, except as above stated.

Our attention has not been directed to any other legislation bearing upon the subject, and the relator rests his claim to immediate possession of the office on the amendatory statutes of 1887, 1889, and 1891, before mentioned, and in which he contends the term of the office in question was first reduced to one year, to take effect in the year 1888, when respondent was first elected, and then enlarged to two years, taking effect, as to respondent's second term, in the year 1891, when he was last elected.

It is the position of the respondent that the term of the judge of the municipal court, as fixed by the act of 1885, establishing the court, has not been changed or shortened by the so-called amendatory acts, because, if the language used therein could be given that effect, it would prove ineffectual; the subject-matter of such legislation not having been expressed, it is claimed, in the title to either of these various acts, as required by Constitution, art. 4, § 27, which provides that no law shall embrace more than one subject, which shall be expressed in its title.

The main argument of counsel for the relator seems to be based upon their contention that the act of 1885, establishing the court, was an amendment to the then existing city charter, and upon its passage became incorporated into and a part of it, so that the subsequent enactments of the legislature amendatory of the charter affected the act. The city charter was not mentioned, and to create this court it was not necessary that it should be. That such an act might be styled as amendatory of a charter, or might be made a part of a city charter, either originally or by legislation subsequent to the granting of corporate powers, we do not now question, although the policy and wisdom of establishing such tribunals by independent and distinctive legislation are strongly suggested by the fact that they can only be lawfully created, under the constitution, by a two-thirds vote of the legislature, while acts relating to offices purely municipal need but a majority vote. But we are not to consider what might have been enacted as a part of the original charter, but what was enacted; so that, taking it for granted that a municipal court might have been provided and created in the charter act, without special reference to such

court in the title, it was not. The city charter was wholly silent on the subject, and covered only such subjects as are ordinarily found in a charter. Nor was there anything in the act of 1885, establishing the court, indicating an intention to add it to, or make it a part of, the charter, or to amend any of the charter provisions; and whether that could have been done legally, under its title, may well be questioned. Of course the functions of the newly-constituted court were to be exercised within the limits of the municipality; and it was established, undoubtedly, at the instance and for the convenience of its residents. That its judges were to be chosen by ballot, by and from among the electors of the city, and that the city recorder was to be clerk of the court, was not significant, or of any greater effect than would have been a requirement that from among the qualified electors of the city the governor should appoint those officers. These provisions simply pointed out, and specified, the means and methods by which the court was to be equipped with its proper complement of officials.

Prior to the passage of Sp. Laws 1885, ch. 119,—an act to establish a municipal court in the city of Mankato, according to its title, —that city had been chartered by the legislature. The act or bill for the charter was full and complete, and the subject embraced therein was tersely, but clearly, expressed in its title. It is probable that the subject-matter covered by said chapter 119 might have been incorporated into this original legislation, or, with a proper and suggestive title, the act creating the court might have been lawfully passed as an amendment to the charter. But this was not the course which was pursued. Instead of adopting a title which would have indicated a purpose to amend the charter, or make the new law a part of it, the exact object of the legislation was expressed. Two laws were then in force, separate and distinct enactments,—one creating and chartering a city, but making no provision for a municipal court, nor was it essential that it should; the other establishing such a court, and not referring at all to the city charter. The fact that the law establishing a judicial tribunal might have been made a part of the charter originally, or by amendment, does not affect the fact that such was not the course of the legislature. Nor can it have weight when considering the legislation through which it is urged the term of

office of the municipal judge, as fixed in chapter 119, has been reduced to the term of two years.

· The constitutional requirement as to the entitling of laws has often been discussed in the opinions of this court. The substance · of what has been said, so far as we need to repeat it at this time, is that an amendatory law is for the amendment, not of what might have been enacted under the title of the original statute, but of what was enacted. Hence the sufficiency of the title of an act merely declared to be amendatory of a prior law, to justify the legislation which may be enacted under it, depends, not alone upon the fact that the title of the original statute was so comprehensive that the legislation in question might have been properly enacted in such prior law, but it depends also upon the nature and extent of the prior enactment, to amend which is the declared purpose or subject of the later act. And when the title of an act is such that the legislature can be deemed to have been fairly apprised of its general character by its subject, as expressed in such title, and all the provisions of such act have a just and proper reference thereto, and are such as, by the nature of the subject so indicated, are manifestly appropriate in that connection, and might reasonably be looked for in a measure of such a character, the title is sufficient. *State* v. *Cassidy,* 22 Minn. 312; *State* v. *Klein,* Id. 328; *State* v. *Smith,* 35 Minn. 257, (28 N. W. Rep. 241.)

Applying this language to the case at bar, it will be seen that it is of no materiality that the matter found in and covered by the act establishing the court might have been germane to the subject embraced in the original charter, and have been sufficiently expressed in the title to that law, for the nature and extent of the charter itself must be consulted. And when we are examining the title to the amendatory act of 1891, under which relator claims his right to immediate possession of the office, and the titles to the acts of which that was an amendment, we are to inquire whether the legislators were fairly informed by such titles of the nature and character of the proposed legislation. In view of the independent charter provisions in existence at the time of the enactment of the law establishing the court, and the title of that law, would amendments to the latter be looked for in measures which, if dependence could be placed upon their titles, related solely to the

charter? We think not. The titles to these amendatory acts, if the legislation embraced therein was designed to affect the provisions of chapter 119, were very misleading, and well calculated to accomplish the mischief the constitutional requirement was expressly designed to prevent. As the subject of that part of the legislation heretofore referred to in Sp. Laws 1887, ch. 8, Sp. Laws 1889, ch. 12, and Sp. Laws 1891, ch. 47, was not expressed in the titles of either of these acts, the term of office of the judge of the municipal court for the city of Mankato remains at three years.

Order to show cause discharged.

VANDERBURGH, J., absent, took no part herein.

(Opinion published 55 N. W. Rep. 134.)