STATE ex rel. J. B. ARPIN and Others v. J. L. GEORGE.[1]

September 19, 1913.

No. 18,333.[2]

**Dismissal of appeal.**

1. A respondent is not entitled to have an appeal dismissed on the ground that the court was without jurisdiction to render the decision appealed from.

**County drains — act constitutional.**

2. In public drainage undertakings, the county is a mere governmental agency of the state, and the contracts which it is required to make and the funds it must provide for such purpose are within the control of the legislature. Hence chapter 567, Laws 1913, in its retroactive aspect, cannot be held to impair any contract obligation or interfere with any vested rights of the county.

**Same.**

3. Although said statute, as to contracts existing prior to its passage, gives a benefit to the contractor at the expense of the ditch fund, it is not clear that the public purpose of drainage may not be promoted thereby. If such purpose may be subserved, the incidental advantage to the contractor does not render the statute open to the constitutional objection that a private gratuity is granted from public funds.

**Same — classification — special legislation.**

4. The objection to the statute that the classification therein made is arbitrary, and that it is special legislation is without merit.

**Mandamus — petition sufficient.**

5. It does not appear from the petition and writ that relators are in default or are not entitled to the amount specified in the engineer's certificate.

[1] Reported in 142 N. W. 945.        [2] Special term of court.

J. B. Arpin and others, doing business under the firm name of
J. B. Arpin Dredging Company, obtained from the district court for
Beltrami county a writ of mandamus directing J. L. George, as
county auditor of that county, to issue to the dredging company a
county warrant upon the drainage. fund for the sum of $9,142.50,
or show cause why he had not done so. Respondent demurred to the
petition and writ; and the county of Beltrami intervened as a de-
fendant, upon the ground that it appeared upon the face of the pe-
tition and writ that the county had an interest in the litigation and
that it would gain or lose by the direct, legal operation of any judg-
ment that might be entered, and demurred to the petition and writ
on the ground that they did not state facts sufficient to constitute a
cause of action. At the hearing relators appeared specially for the
purposes of the motion, and moved that the demurrer of the county,
and notice of argument thereon, be dismissed on the ground that the
court had no jurisdiction to hear and determine the same. The court,
Stanton, J., denied the motion to dismiss the demurrer, overruled the
demurrers, and certified the question presented by each of the de-
murrers as important and doubtful. From the order overruling the
demurrers to the petition and alternative writ, respondent George,
as county auditor, and the county of Beltrami appealed. Affirmed.

*Graham M. Torrance,* for appellants.

*E. M. Stanton,* for respondents.

HOLT, J.

This is an appeal from an order overruling separate demurrers in-
terposed by the defendant and the intervener to a petition and alter-
native writ of mandamus. The court below certified that the ques-
tion presented by the demurrers was important and doubtful.

The main facts disclosed by the petition and writ, and necessary
here to state in order to a proper understanding of the controversy,
are these: The defendant is the auditor of Beltrami county. In
February, 1911, the relators entered into a contract with the coun-
ties of Marshall and Beltrami to construct therein judicial ditch No.
12, and gave a proper bond for its performance. The ditch was to
be completed by December 1, 1912, but an extension of one year was

granted. The estimated cost of the ditch and roadway on its banks was about $70,000. As the work progressed, payments were made to the relators of 75 per cent of the yardage excavated, as provided in the law in force when the contract was made and as therein stipulated. The cost of construction apportioned to Beltrami county was 99.73 per cent and to Marshall county .27 per cent. On June 30, 1913, the engineer in charge of the construction issued to relators and filed with the respective county auditors a certificate conforming to chapter 567 of the Laws of 1913 [p. 835] showing that the contract price exceeded $30,000; that the total amount of constructive work done at the contract price was $48,892.13; that the total amount of the estimates or certificates theretofore issued to the relators for such work was $36,669.09; that the balances retained by said counties upon the work done amounted to $12,223.04; that 72.3 per cent of the whole construction was complete; that 75 per cent of the balance retained by Marshall county for the work as far as completed was $24.75, and by Beltrami county was $9,142.50; and that in his opinion no loss will result from the payment of said sums to relators. The defendant, as auditor of last named county, refused to issue a warrant on the treasurer for the amount specified. The county of Beltrami was permitted to intervene by demurrer over the objection of relators that the court had no jurisdiction to hear and determine such demurrer.

The relators insist that their objection was valid and should result in the dismissal of the county's appeal in this court. The relators are not appealing, hence cannot assail the propriety of the order permitting the intervention. Nor should they now have the appeal dismissed, because that would result in giving them the benefit of a decision on the merits on the assumption that jurisdiction existed.

Under the terms of relators' contract, and the law in force when it was executed, the auditor's refusal to issue the warrant was proper. But the right thereto is claimed under chapter 567, Laws of 1913, which amends the amended section 17 of chapter 230, Laws 1905 [p. 321], the drainage act, so that, as to the existing contracts involving work the total estimates of which exceed $30,000, 75 per

cent of the one-fourth which, under the contracts and the prior law, was to be retained by the county out of the estimates given by the engineer in charge as the work progressed until the full completion thereof might be paid to the contractors, after 50 per cent of the excavation was done, and there was no default, provided the engineer in charge gave a certificate stating the facts and that no loss would result from such payment. In the instant case the certificate above mentioned issued by the engineer in charge complied with the law of 1913.

The appellants contend that, as to prior contracts, the act referred to contravenes the constitutional provisions, state and Federal, forbidding impairment of contract obligations; that the classification attempted is arbitrary and invalid; that it is special legislation; and that the effect upon the contract with relators is to appropriate public funds for private gain. The relators' position is that the county is not interested in drainage contracts, except as a mere governmental agency of the state in carrying on the purpose of promoting public health and welfare; that therefore the state retains full control of the drainage contracts, and may modify those already entered into with the consent of the contractors and sureties, at its pleasure; and that the legislature has plenary power over the disposition of funds of counties, therefore the county cannot claim any right to contract obligations, or private interest in the contract, or in ditch funds which need be respected by the legislature.

If the county is a party to relators' contract in any other capacity than as a governmental agency of the state, or if it owned the fund from which the work done is to be paid, no one could pretend that the legislature had the power to change the terms of this contract without the consent of the county. The act would then be objectionable as an impairment of contract obligations and an interference with vested rights. But we have no doubt that in drainage work, as carried on under our statutes, the county is a mere governmental agency of the state. That the state for such public purpose, or for any legitimate object within its police power, may make use of a county or governmental subdivision, and lay the burden upon it to carry out the project is well settled. State v. Smith, 58 Minn.

35, 59 N. W. 545, 25 L.R.A. 759; State v. Johnson, 111 Minn. 10, 126 N. W. 480. This being so, the state has at all times the right to direct and control its agent in the performance of the work and in the application of the funds raised therefor. While the county is thus a mere agent in carrying on a governmental function, it does not admit of doubt that the state may impose upon the county the financial responsibility connected with the exercise of such function. Van Pelt v. Bertilrud, 117 Minn. 50, 134 N. W. 226.

Therefore, as far as existing drainage contracts are concerned, we conclude that the county has not such an individual or private interest therein that it can object to a modification thereof by the state, whenever the legislature may deem it advisable in furtherance of the drainage scheme. The state could, in the first instance, have prescribed any terms or conditions in drainage contracts which the lawmaking power deemed proper; and, in achieving the object to be attained by drainage, it ought to be able to modify such contract without the consent of its agent, the county, as it finds best. It has been held that a municipal corporation has no such interest in contracts, or funds, held by it for governmental purposes that it can invoke against a legislative act affecting such contract or fund the constitutional objection of impairment of contract obligation or interference with vested rights. Little River v. Reno County, 65 Kan. 9, 68 Pac. 1105. See also, Beach, Public Corp. §§ 722, 723, and Guilder v. Town of Dayton, 22 Minn. 366, as to the control of counties and the funds held for public purposes.

The serious objection to this act, as to contracts entered prior thereto, is the contention that it bestows a gratuity upon the contractor out of public funds, without serving any public purpose and without there being any moral obligation on the state or county so to do. A county, wherein public drainage is undertaken, is required to provide a ditch fund by the issue and sale of bonds for which the county's credit is pledged (Van Pelt v. Bertilrud, supra); and it is also authorized to transfer to this fund any surplus remaining in the general revenue, or other funds of the county which can properly be used for the purpose of the act. Section 18, c. 230, p. 322, Laws 1905, as amended by section 7, c. 469, p. 572, Laws 1909. By section 500,

R. L. 1905, the county treasurer is required to deposit the funds entrusted to his care in designated banks, which agree to pay interest on monthly balances. It is therefore plain that, if there is sufficient in the ditch fund on deposit in the banks to meet the payments required by this amendment of 1913 ahead of the time specified in the contract of relator, there is a loss of the interest which such payments would have earned had they remained in the bank until the full completion of the contract. On the other hand, if the bonds have not been negotiated and the ditch fund is empty, then the warrant issued draws interest at 6 per cent, and a loss of such interest from the time of the issuance of the warrant up to the time of the completion of the work results to the ditch fund.

To the mind of the writer, the contention that no public object is subserved by a modification of existing drainage contracts seems almost unanswerable. The only public purpose to be attained was the construction of a ditch in the place, of the kind, and upon the terms specified in the contract. A proper bond secures a strict performance thereof. The modification made by the act of 1913 does not, as a matter of right, secure a speedier or better performance of the contract or the purpose for which it was made. The benefit is to the contractor alone. His gain, the ditch fund must to some extent bear. Nor can this law, as applied to contracts already in existence, find justification in any moral claim. It applies as well to a contractor who has secured a highly profitable contract as to the one who entered into a losing venture. Surely there is no moral obligation to help out the former. In State v. Foley, 30 Minn. 350, 15 N. W. 375; Coates v. Campbell, 37 Minn. 498, 35 N. W. 366; Rippe v. Becker, 56 Minn. 100, 57 N. W. 331, 22 L.R.A. 857; Wm. Deering & Co. v. Peterson, 75 Minn. 118, 77 N. W. 568; Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 97 N. W. 454, and Castner v. City of Minneapolis, 92 Minn. 84, 99 N. W. 361, 1 Ann. Cas. 934, the principle is settled in this state that the legislature has not the power to bestow a private gratuity out of public funds, where no public purpose is sought to be attained thereby, or where there is no moral obligation to render the aid.

But it is elementary that, to justify a court in holding a statute

invalid because repugnant to a constitutional provision, no reasonable doubt should remain in the judicial mind that such repugnancy actually exists, Curryer v. Merrill, 25 Minn. 1, 33 Am. Rep. 450. The wisdom of modifying existing drainage contracts is not for the court, nor are we to determine whether the terms prescribed for those in the future are the most desirable. Neither is it decisive that no public purpose may eventually result from such legislation. We apprehend that if it can be said that the object to be attained by drainage might, in the judgment of the legislature, be better accomplished by a modification as to time and amount of the payments to be made during the progress of the work, then the act is in the interest of a legitimate public purpose and valid. The benefit or favor to the contractor is a mere incident to the public gain intended by the law and does not raise any constitutional objection thereto. We may readily surmise that up to 1913 the magnitude of drainage undertakings had not been fully anticipated by legislators. And may it not be said that it was then realized that, under certain contracts already under way, such large sums, in reality earned, were withheld from the contractors, that the finishing of the work might be delayed, embarrassed and rendered uncertain, unless the time of payment was modified? If so, this law avoiding or attempting to avoid such a situation would serve a public purpose. The same reasons which induced the modification of the law as to future drainage contracts, and their classification, may, to a large extent, have moved the legislative mind to also make it applicable to existing contracts. As to the money which this law permits to be paid, it is not a gratuity. It does not increase the contract price. It has actually been earned. It is equitably the contractor's. At most, the benefit or gratuity received by the contractor is the use of the money before the time originally fixed. We therefore conclude that it does not so clearly appear that, as to prior contracts, the act in question serves no public purpose that we are justified in declaring it invalid.

As to future drainage contracts, it is clear that it is within the legislative discretion to classify and prescribe the terms thereof. Assuming our conclusion to be correct, that there may be a legitimate public purpose served by modifying existing incompleted drainage

123 M.—5.

contracts, then the objection of special legislation and arbitrary classification is without merit, and need not be discussed.

The claim that the petition and writ disclose that the relators were in default, hence they were not entitled to the warrant, cannot be sustained, for it appears that an extension had been lawfully granted to relators. Nor does it so clearly appear that any part of the money which, according to the engineer's certificate and the act of 1913 the relators are entitled to, has been forfeited by delay occuring prior to the granted extension of time that the cause should be determined on demurrer.

Order affirmed.

PHILIP E. BROWN, J., took no part.