## STANLEY LYMAN v. RAY P. CHASE.[1]

No. 27,578.

August 23, 1929.

[1]Reported in 226 N. W. 633, 842.

R. G. *Andrews,* for appellant.

G. A. *Youngquist,* Attorney General, and *Charles E. Phillips,* Assistant Attorney General, for respondent.

C. L. *Pegelow,* County Attorney of Beltrami County, *Junell, Dorsey, Oakley & Driscoll* and *Hugh H. Barber,* amici curiae, filed a brief in support of the contention of respondent.

HOLT, J.

Action to enjoin the state auditor from issuing certificates of indebtedness, as directed by L. 1929, p. 298, c. 258, based on the alleged ground that the act violates art. 9, §§ 1, 5, 6 and 10, of the state constitution. From the order sustaining a demurrer to the complaint, plaintiff appeals.

Plaintiff is a taxpayer and resident of Hennepin county and sues in behalf of other taxpayers of the state similarly situated. The act creates a state wild life preserve and hunting ground of a designated area within Beltrami, Lake of the Woods, and Koochiching counties, and provides for the acquisition therefor of the "unredeemed delinquent lands" therein, for the payment and retirement of the county bonds secured in part by assessments on the lands so acquired, and for the payment of the school and township bonds secured in part by tax levies on said lands, thereby protecting the credit of the state, its political subdivisions and municipal corporations by preventing default in the payment of said bonds. The title of the act is more specific and detailed, but the above indicates the most prominent features of the law which bear on the constitutional questions presented. Attention may also be directed to the fact that in the preamble to the act six reasons motivating its adoption are stated, some of which are greatly stressed by appellant as

indicating that the state tax authorized therein to be levied to pay the certificates of indebtedness defendant is directed to issue is for a private purpose and inhibited by the constitutional provisions he invokes.

Appellant does not controvert, what we take to be settled law, that the legislature has power to appropriate public funds and direct taxes to be levied for the acquisition and maintenance of public parks. Such object is for a public purpose. Shoemaker v. U. S. 147 U. S. 282, 13 S. Ct. 361, 37 L. ed. 170. To establish a territory for wild life such as game and fish, so that the inhabitants of the state may therein procure the recreation and profit that regulated hunting and fishing affords, is equally for a well recognized public purpose to say nothing of fostering other natural resources, such as the growth of forests. Moreover, the state has an interest in game and fish, holding the same in its sovereign capacity for the benefit of the people of the state, a public purpose. State v. Rodman, 58 Minn. 393, 59 N. W. 1098; Lipinski v. Gould, 173 Minn. 559, 218 N. W. 123, 730. By acquiring and devoting a suitable habitat for the propagation and preservation of wild life the state is furthering the interest of the public in game, fish, and fur-bearing animals which it holds for the use and benefit of all.

It is not disputed that if the main purpose or object of a state outlay or tax is public, it is no objection that private interests are incidentally served. But appellant contends that the object chiefly sought by this law is to relieve the three counties of their debts. And if this be not so, still that is an avowed object. If this be true the law cannot be sustained, for if an act authorizes a state tax for both a public and private purpose and the two cannot be separated the whole is invalid. Coates v. Campbell, 37 Minn. 498, 35 N. W. 366. Appellant contends that for the state to appropriate money or levy taxes to pay the debts of a county or a municipality must be considered as appropriated or levied for a private purpose, but concedes that no authorities have been found directly in point. However we are of the opinion that, even though it be admitted that one of the objects of the law was to relieve the counties mentioned

of a part of the debt incurred in drainage projects, still the certificates the auditor is required to issue and the state tax authorized to meet them are for a state-wide public purpose.

It is to be remembered that nearly 30 years ago, when the constitutionality of the drainage law was attacked, this court upheld the same on the ground that it was enacted for the public purpose of protecting public health and for the promotion of public welfare. Lien v. Commrs. of Norman County, 80 Minn. 58, 82 N. W. 1094; State ex rel. Utick v. Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161. Being for a public purpose the state could have financed or aided in financing such projects; but it cast the whole burden upon the counties wherein the drained lands were situated, the counties to be reimbursed from assessments upon the lands benefited. Counties are certainly no more chargeable with public health, convenience and welfare than the state itself; but nevertheless the state could and did lay the duty upon the counties to issue the bonds needed to finance drainage projects established to promote the public purpose named. Van Pelt v. Bertilrud, 117 Minn. 50, 134 N. W. 226; State ex rel. Arpin v. George, 123 Minn. 59, 142 N. W. 945. So drainage bonds, from the viewpoint of the state, do not represent the ordinary obligations or debts of the county.

The preamble to the act [L. 1929, c. 258] recites, what perhaps is common knowledge, that the drainage in the counties named failed to bestow the anticipated benefits upon the lands assessed, such lands being found incapable of being used for agricultural purposes. The result was that the owners of a large amount of such lands have defaulted in the payment of such assessments and all taxes. The legislature also recognized the injustice which existed in the drainage law when most of the drainage projects in these counties were put through, in that the taxpayers in the county not owners of land in the drainage district could not be heard to object to such drainage, yet for the bonds issued by the county to finance the project, if there be default, their property must respond to a county tax levy to meet such bonds. It also appeals to us that the state

has such interest in having its governmental agencies preserved and functioning properly that the state can come to their rescue when their peril is imminent.

The counties in question, under statutes perhaps not the most prudent, were compelled to issue drainage bonds to the extent of several millions. Much of the lands assessed for benefits has been bid in by the state for delinquent taxes and remains unredeemed. No further taxes may be hoped for therefrom by either the state or the counties. If taxes sufficient to meet the outstanding drainage bonds are to be levied on the remaining lands and property in the counties, such taxes will be so high as to amount to confiscation and result in so great portion of the taxable lands being abandoned that the counties would be unable to meet these bonds or other current expenses. Under this situation it would seem that there is at least a moral obligation for the state to come to the rescue of a governmental agency upon which it ill-advisedly imposed a state burden which through no fault of the agency would spell its financial ruin. It may also be noted that the unredeemed lands appropriated by the state for the preserve were subject to these assessments for the payment of the drainage bonds, and when the state now takes the same for a perpetual public use it would seem equitable and proper that it assume such assessments as the act prescribes; and also that in consideration thereof the county protect the bonds of school districts and townships as therein provided.

That relief to these three counties is a public purpose, justifying the law in question, is supported by such cases as Sacramento & S. J. Drainage Dist. v. Riley, 199 Cal. 668, 251 P. 207; Kinney v. City of Astoria, 108 Or. 514, 217 P. 840. And as cases where a public purpose sustains a state appropriation and taxation, although individuals are benefited, may be cited Gustafson v. Rhinow, 144 Minn. 415, 175 N. W. 903; Hagler v. Small, 307 Ill. 460, 138 N. E. 849.

While under Van Pelt v. Bertilrud, 117 Minn. 50, 134 N. W. 226, and State ex rel. Arpin v. George, 123 Minn. 59, 142 N. W. 945, drainage bonds as to the holders thereof are the debts of the counties issuing them, the considerations above stated place a different

view of responsibilities as between the state and the county—the state's agent in the premises. We therefore do not think the act is inhibited by art. 9, § 10, of the state constitution, which prohibits the lending of the credit of the state in aid of any individual, association or corporation.

It is also urged that c. 258 must fall because of L. 1929, p. 595, c. 415, enacted and approved eight days later. The proposition is a novel one. The later act does not purport to modify or amend the prior one as to object, scope, purpose or procedure. The only language that affects the established preserve is this inserted in amending G. S. 1923, § 2139:

"Provided, the minimum amounts of ditch liens or assessments to be so included in the sale of lands within the Red Lake Game Preserve shall be the full amounts of such ditch liens and assessments."

It is plain that if a public purpose is the object of the state tax authorized to meet the certificates respondent is directed to issue, the act creating the preserve must stand, no matter what happens to the proviso quoted from the subsequent enactment.

We do not deem a further discussion of the constitutional objections to the act needed. Inequalities in taxation, depending upon whether land in the same drainage district is within or without the preserve created by the act, cannot affect constitutionality, even if there be discrimination between such lands. It is also doubtful whether plaintiff, who does not show that the supposed discrimination affects him, may urge unconstitutionality on that ground. 6 Dunnell, Minn. Dig. (2 ed.) § 8935. Before a court is justified in declaring a statute void because in contravention of constitutional provisions it must be palpably so. In other words, unless a law is unconstitutional beyond a reasonable doubt it must be sustained. 6 Dunnell, Minn. Dig. (2 ed.) § 8931, and authorities cited in note 52 thereof.

In our opinion L. 1929, p. 298, c. 258, does not offend any provision of our constitution under the principles by which courts are guided.

The order is affirmed.

250

On September 27, 1929, the following opinion was filed:

Holt, J.

Of its own accord the court ordered a rehearing because of the importance of determining, before public funds are expended in putting the law into operation, whether some other constitutional provision is likely to be urged against it than the ones the parties to this appeal saw fit to raise. Neither appellant nor respondent suggested that this act violated art. 4, § 27, of the constitution, reading: "No law shall embrace more than one subject, which shall be expressed in its title," until after the decision was filed. Though not blind to the possibility that someone might make the claim, the interpretation given the act in the opinion rendered was deemed sufficient to show the futility of such an attempt. But in this it seems we were mistaken. For these reasons a rehearing was ordered upon the sole question whether the law offends the section of the constitution just quoted.

No one can contend that the title of L. 1929, p. 298, c. 258, fails to designate the main provisions of the law or that it is misleading. Nor in reason can it be maintained that because the title too profusely indicates the contents of the various sections of the chapter this mandatory provision of the constitution is violated. So the only question is: Does the law embrace more than one subject as that term has been construed by this court?

As stated in the opinion already rendered, the subject of the law was the establishment of a wild life preserve. Necessarily and logically connected therewith was its location, the acquisition of the lands needed therefor, and the terms and conditions upon which such lands were to be forever freed from obligations owing county, township, and school districts. All the provisions of the law relate to the subject, the preserve. Each fits into the scheme or plan of the legislature as a means to an end. The constitutional requirement quoted does not mean that when the subject of a legislative enactment is of some magnitude, embracing various means contributing to its accomplishment, there must be enacted two or more

separate acts. If the matters embraced in the law are reasonably or fairly related to or connected with the general subject expressed in the title, there is a compliance with art. 4, § 27. In other words, when the several provisions of the law are germane to the one main subject expressed in the title and are not foreign thereto or disconnected therewith, they do not contravene this provision of the constitution.

L. 1889, p. 94, c. 46, entitled, "An act to establish a probate code," containing 21 subchapters with 326 sections, was held not to conflict with art. 4, § 27, in Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 924, 28 A. S. R. 382. Consistently this court had held that this constitutional provision was not adopted with a view to hamper the legislature in its work. One of its main purposes was to prevent incorporating in a law provisions not fairly disclosed or reasonably suggested by its title. In the instant case the title surely discloses what is in the law.

Another chief purpose was to prevent the so-called "log rolling," whereby several disconnected or unrelated subjects might be put through in one act which would not command sufficient votes if placed before the legislators as separate propositions.

In State v. Cassidy, 22 Minn. 312, 21 Am. R. 765, where an act was challenged on the ground that its title "indicated one thing, and the body of the act another and different thing" and hence the law was a nullity, the court, after referring to prior decisions on the subject, said [page 324]:

"It matters not that the act embraces technically more than one subject, one of which only is expressed in the title, * * * so that they are not foreign and extraneous to each other, but 'blend' together in the common purpose evidently sought to be accomplished by the law. Neither is it important that all the various objects of an act be expressly stated in its title, nor that the act itself indicate objects other than that so mentioned, provided they are not at variance with the one so expressed, but are consonant therewith. Most laws have several objects in view. * * * Besides, the 'subject' of the act, and not the 'object' had in view by its

252

enactment, * * * is what is required by this clause of our constitution."

To the same effect is State ex rel. Nash v. Madson, 43 Minn. 438, 45 N. W. 856. And in Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923, appears this clear exposition of the meaning of art. 4, § 27:

· "The term 'subject,' as used in the constitution, is to be given a broad and extended meaning; so as to, allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject."

Tested by these prior opinions, it is clear that the general subject of L. 1929, p. 298, c. 258, is the establishment of a state wild life and hunting preserve, and that the other objects sought to be accomplished by the act relate to and are logically connected with that subject and all tend to carry it into effect. Other fully considered cases following and applying the principles stated in those above cited are: Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788; State ex rel. Olsen v. Board of Control, 85 Minn. 165, 88 N. W. 533; State v. People's Ice Co. 124 Minn. 307, 144 N. W. 962; State ex rel. Olson v. Erickson, 125 Minn. 238, 146 N. W. 364; State v. Helmer, 169 Minn. 221, 211 N. W. 3. We are content to cite only the following from other jurisdictions: Perkins v. Commrs. of Cook County, 271 Ill. 449, 111 N. E. 580, Ann. Cas. 1917A, 27; Swierczek v. Baran, 324 Ill. 530, 155 N. E. 294; McKiever v. City of Sumter, 137 S. C. 266, 135 S. E. 60. See also 25 R. C. L. pp. 834-847, §§ 82-94.

Appellant cites and relies upon Winona & St. P. R. R. Co. v. Waldron, 11 Minn. 392 (515), 88 Am. D. 100; Mississippi & R. R. B. Co. v. Prince, 34 Minn. 79, 24 N. W. 361; State ex rel. Rice v. Smith, 35 Minn. 257, 28 N. W. 241; State ex rel. Holman v. Murray, 41 Minn. 123, 42 N. W. 858; State ex rel. Shissler v. Porter, 53 Minn. 279, 55 N. W. 134; Kedzie v. Town of Ewington, 54 Minn. 116, 55 N. W. 864; Palmer v. Bank of Zumbrota, 72 Minn. 266, 75 N. W. 380; State ex rel. Wagener v. Sullivan, 73 Minn. 382, 76 N. W. 224 (wherein the prior decisions involving the same act are cited) ; State ex rel. Brun v. Oftedal, 72 Minn. 498, 75 N. W. 692; State ex rel. Day v. Hanson, 93 Minn. 178, 100 N. W. 1124, 102 N. W. 209; Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104; Megins v. City of Duluth, 97 Minn. 23, 106 N. W. 89; State v. W. and C. Hospital, 143 Minn. 137, 173 N. W. 402; State v. Palmquist, 173 Minn. 221, 217 N. W. 108. But a cursory examination of all these cases will readily disclose that not one sustains the contention that L. 1929, p. 298, c. 258, violates art. 4, § 27, of the constitution. In some of the cited cases the statute contained provisions not embraced in the title but foreign thereto and disconnected therewith. In others the title was restrictive, and certain provisions in the law covered matters beyond the restriction. To this class may also be assigned the decisions in respect to laws purporting by the title to amend a prior law but containing a provision repealing a section of still another statute. In others again the title was misleading, such as the Ramsey county salary cases, the body of the law being so drawn that salaries might be increased while the title purported to authorize reduction only. In this category may be placed State ex rel. Keith v. Chapel, 63 Minn. 535, 65 N. W. 940.

The order is affirmed.