WILLIAM S. WOODBRIDGE *vs.* DULUTH CITY *et al.* .

Argued April 19, 1894.　Affirmed May 11, 1894.

No. 8919.

**Duluth charter construed.**

> Under the amendment (Sp. Laws 1891, ch. 55, § 35) to the charter of the city of Duluth (Sp. Laws 1887, ch. 2, subch. 9, § 9), "water and light bonds," may be issued by the authorities of said city, the requisite preliminaries having been duly observed, as a part of its general indebtedness, notwithstanding such bonded indebtedness already exceeds five per cent. of the assessed valuation of the taxable property in the city, according to the then last assessment.

**Reasonable time a question of fact.**

> Whether "reasonable time" has elapsed, in any given case, may be a question of law; but, on the complaint here, it is one of fact, not to be disposed of on demurrer.

Appeal by plaintiff, William S. Woodbridge, from an order of the District Court of St. Louis County, *S. H. Moer*, J., made March 26, 1894, sustaining a demurrer to his complaint.

Plaintiff is a resident, citizen and taxpayer of the City of Duluth and commenced this action March 16, 1894, against that city, the members of its common council and its other officers to restrain the issue and sale under Sp. Laws 1891, ch. 55, § 35, p. 638, of $800,000 "Water and Light Bonds." The complaint stated that an election was held under the act on August 4, 1891, and a majority of the legal voters present and voting, voted to issue the bonds, that over two and a half years had since elapsed, that if the bonds were now issued and sold the total indebtedness of Duluth would exceed five per cent of the assessed value of the taxable property of the city. The defendants demurred to the complaint and the court sustained the demurrer. Plaintiff appeals.

*S. T. & Wm. Harrison,* for appellant.

The assessed value of the taxable property of Duluth according to the last assessment was $43,875,582 and the total bonded indebtedness of the city, exclusive of the $800,000 water and light bonds proposed to be issued, $1,865,150.

If the water and light bonds are issued the total bonded indebtedness of the city will exceed five per cent of the assessed value of the taxable property, in the sum of $471,370.

The vote was taken on August 4, 1891, authorizing the issuance of bonds, but nothing further was done until January 22, 1894, at which time the council passed an ordinance authorizing the sale of said bonds. It seems to us that the council could only act upon this matter within a reasonable time after the vote and that two years and five months is more than a reasonable time. For this reason the council has no authority to issue bonds.

*Page Morris,* for respondents.

COLLINS, J. By the charter of the city of Duluth (Sp. Laws 1887, ch. 2, subch. 9, § 9) the common council is authorized to pass an ordinance whereby there may be issued coupon bonds of said city, in the sum of $100,000, for the permanent improvement fund, for the purchase or payment before or at maturity of valid outstanding bonds issued by the old city, and for the payment of any maturing bonds of the city or village, and other bonds for the benefit of the general fund in such amount as the council may deem advisable: provided that no bonds shall be issued, or be valid, if issued, which shall increase the bonded indebtedness on which the city is liable above five per cent. of the assessed valuation of taxable property in the city, according to the then last assessment. The manner in which these bonds are to be signed, countersigned, placed upon the market, and sold, is also regulated by the law. By Sp. Laws 1891, ch. 55, § 35, there were added to section 9, *supra,* by amendment, certain provisions for temporary loans by the council as occasion might require, to be evidenced by coupon notes, the amount of the sum to be taken and considered a part of the bonded indebtedness as affected and limited by the five per cent. proviso. Section 9 was further amended by adding a provision in the following language:

"Water and Light Bonds. The city of Duluth is hereby authorized to issue water and light bonds to such an extent as may be necessary for the purpose of erecting and maintaining suitable water and light plants, or for purchasing any water or light plant in operation in said city. Said bonds shall be issued, sold and evi-

denced in the same manner as the general bonds of the city except as hereinafter provided. They shall be a first lien upon all water and light appliances and structures of every kind erected, owned or purchased by said city, and the amount of indebtedness required in order to secure said water and light plants shall not be deemed to be a part of the general indebtedness of the city heretofore referred to as not to exceed five (5) per cent. of the assessed valuation of property within said city, but shall be held to be a special indebtedness, and shall be, as hereinbefore stated, a special and exclusive lien upon all water and light franchises purchased by said city in whole or in part by said funds."

Then followed provisions for the submission of a proposition to issue such bonds to the legal voters of the city, and, if a majority of the votes cast at the election were in favor of their issue, the proper officials were authorized to issue, negotiate, and sell the same as other city bonds were issued, negotiated, and sold. It was also provided that the council might, from time to time thereafter, submit the proposition of issuing other and additional water and light bonds to the voters, and further, that, if the revenues derived from water and light plants owned by the city exceeded the cost of operating and maintaining the same, not less than twenty five per cent. of the net revenue should be set aside by the city to create a sinking fund for the payment of the bonds as they matured.

The principal question discussed by counsel on the argument of this appeal is whether the charter, as amended in 1891, confers upon the council, a majority of the legal voters having duly voted in favor of the proposition to issue water and light bonds, the power to issue bonds, upon which the city is generally liable, at a time when, by such issuance, the bonded indebtedness of the city will exceed five per cent. of the assessed valuation of the taxable property in the city, according to the then last assessment; and, to determine this, we have to ascertain, if possible, the legislative intent, as expressed in the act of 1891, which, it will be observed, was a direct amendment to that section of the charter in which we find the five per cent. proviso. This fact may be kept in mind when construing the language. And the legislative purpose and the object aimed at are to be also kept in mind, and language susceptible of more than one construction is to receive that which will

bring it into harmony with such object and purpose, rather than that which will tend to defeat it.

It is contended by counsel for respondents that it was the purpose of the legislature, manifested by the wording of the law, to make the water and light bonds a special indebtedness, not enforceable against the city, as are other bonds, but solely and exclusively by resort to the water and light franchises, structures, and appliances. It seems to be claimed that, because these bonds were made a special and exclusive lien upon the water and light plant or plants, it inevitably follows, without regard to other language found in the law, that they cannot be a part of the general indebtedness of the city, or, if they are, that they fall within the inhibitory clause of the charter. It would be a forced and unnatural construction of the enactment, probably operating to wholly defeat its purpose, to hold that the holders of the bonds could only look to the franchises, structures, and appliances for payment. We are not inclined to presume that the legislature simply intended to confer upon the city the worthless privilege of putting bonds on the market, in the hope of their being purchased by capitalists who would be willing to advance money, that the city, without incurring any liability itself, might experiment in furnishing water and light to its citizens.

Not only this, but, if these bonds were not to be considered as a part of the general indebtedness of the city, all reference to the five per cent. clause was superfluous and unnecessary. There can be no doubt but that, while these bonds—undoubtedly for better security —are made a special and exclusive lien upon the plants, they are a part of the bonded indebtedness of the city, as much as any other bonds. This leads up to the important inquiry already stated, and we are of the opinion that there is no ambiguity or doubt about the legislative intent and purpose, as expressed in the amendment. It will be noticed—and we have already referred to this—that by the first paragraph of the amendment to section 9 the council was authorized to make temporary loans, issuing coupon notes therefor, and, that there might be no question as to these notes, it was expressly provided that the indebtedness incurred in this way should be taken and held as a part of the total indebtedness referred to in a preceding and prohibitory clause of the section. Then comes

that part of the amendment which covers and authorizes the issuance of the bonds in question, and again did the legislature express itself in plain language, by declaring that the bonds so issued should not be deemed a part of the general indebtedness already referred to as not to exceed five per cent. of the assessed valuation. Putting the language in a different form, it is that in estimating the bonded indebtedness of the city, for the purpose of ascertaining whether the limit had been reached, the water and light bonds should not be taken into consideration. No other effect can be given the language, and if it does not mean this it means nothing at all. The entire structure of the amendment indicates, unmistakably, that it was well appreciated by the legislature that water and light bonds which would serve the purposes of the city, and enable it to buy or build the necessary equipment, would have to be issued in a large amount, far exceeding that already authorized. The office of the amendatory legislation was to empower the city to proceed without limitation or restriction as to the amount in the issuance of bonds for the particularly specified object.

It is urged that more than a reasonable time elapsed after the bonds were voted before the council passed the ordinance under which they must be issued. That question cannot, under the circumstances appearing in the complaint, be regarded as one of law, to be disposed of on demurrer. Whether reasonable time has elapsed in any given case may be one of law, but here it seems to be one of fact.

This disposes of all questions argued by appellant, and the order is affirmed.

BUCK, J., absent on account of sickness, took no part.

(Opinion published 59 N. W. 296.)