W. E. VAN PELT v. S. G. BERTILRUD and Others.[1]

January 26, 1912.

Nos. 17,486—(241).

**Drainage bonds — direct obligation of county.**
    The bonds issued by the county under the drainage act (section 18, c. 230, of the Laws of 1905, as amended) are the direct and general obligations of the county issuing the same.

**Act valid.**
    The provision of the act, so construed, is within the legislative power.

Action in the district court for Roseau county to permanently enjoin the auditor of that county and the members of the county board from proceeding further in the matter of a certain bond issue and from signing, executing or delivering the bonds of the county. From an order, Grindeland, J., sustaining defendants' demurrer to the complaint, plaintiff appealed. Affirmed.

· *Gideon S. Ives,* for appellant.

*M. J. Hegland, Ambrose Tighe,* and *William J. Brown,* for respondent.

*Lyndon A. Smith,* Attorney General, and *C. Louis Weeks,* Assistant Attorney General, filed a brief in behalf of the state.

*J. M. Martin* and *H. C. Deering,* as friends of the court, also filed a brief.

HOLT, J.

Plaintiff brought this action to restrain the auditor and board of county commissioners of Roseau county from issuing and negotiating bonds under the provisions of section 18, c. 230, p. 322, Laws 1905 [R. L. Supp. 1909, § 2651—61], in such form as to create a direct obligation of the county. A demurrer to the complaint being sustained, plaintiff appeals.

[1]Reported in 134 N. W. 226.

From the complaint it appears that pursuant to the provisions of the drainage statute a ditch was duly established in the county, the contract for its construction duly let, and a large part thereof completed by the contractor; that on October 12, 1911, it became necessary to provide funds for the payment of the expenses incurred and to be incurred in the construction of the ditch, and thereupon the county commissioners duly passed a resolution that negotiable bonds of the county of Roseau be issued for $13,000 to defray in part said expenses. The form of the bonds is set out in full, and shows on its face compliance with section 18, c. 230, p. 322, Laws 1905, as to the time of payment and interest. It stated that it is issued by authority of and in strict accordance with the provisions of the drainage act, and also contained this recital:

"That the ditch on account of which this bond is issued is a public drainage ditch duly and legally established for the health, convenience and general welfare of the public, and that the total indebtedness of said county, including this bond, does not exceed any statutory or constitutional limit. The full faith, credit and resources of the county of Roseau are hereby irrevocably pledged for the punctual payment of the principal and interest of this bond at maturity."

It is alleged that the bonds were properly signed and a sale negotiated, so that unless restrained, the county would complete the sale, receive the money therefor, and place the same in the county ditch fund. By proper averments plaintiff shows that he is a landowner in the county, but that his lands are not benefited by the ditch, and are not assessed for alleged benefits under the act; that there will not be sufficient funds collected from the benefits assessed to pay for the expenses of the ditch, and hence plaintiff's land will be burdened in the general taxes to pay for the same.

The appeal presents these two questions: (1) Did the legislature intend that the bonds issued under the drainage act should be the direct obligations of the county? (2) If such be the intent and meaning of the law, had the legislature the power so to provide?

1. The theory upon which drainage legislation rests is public utility and welfare. The interests of individuals are incidental,

and can never alone justify either changing or affecting property against the owner's consent, as may be done in establishing drains. It is to subserve a public purpose, and not private ends, that the law was enacted. With this in mind, it is not difficult to come to the conclusion that the legislature intended that the county should be primarily and directly liable for the expense of establishing, constructing, and maintaining this public utility. And if the expense is paid by the county by the issue and sale of bonds, then the county should pledge its credit for the payment of such bonds.

This intention is also disclosed in the provisions and general tenor of the law. Section 11 [Laws 1905, p. 316] provides that, where damages have been awarded to any person, the county commissioners shall order the same paid out of the treasury of such county. The contracts for the construction shall be in the name of the county, and the bonds required from the contractors shall run to the county. Section 14 [p. 318]. For keeping the ditch in repair the general revenue fund of the county shall be drawn on. Section 26 [p. 327]. Then in section 18 [p. 322], as amended by subsequent acts (section 3, c. 367, p. 514, Laws 1907, and section 7, c. 469, p. 573, Laws 1909, [R. L. Supp. 1909, 2651—61]) it is provided the county boards may issue "the bonds of their respective counties" in such amount as may be necessary "to defray, in whole or in part, the expense" of the ditch; the board shall have power to negotiate the bonds as they shall deem for "the best interest of said county;" the proceeds from the sale of such bonds shall be placed in "a general ditch fund;" and the county board "shall provide moneys for the payment of the principal and interest" of the bonds, "which moneys shall be placed in the general ditch fund, into which fund it may transfer any surplus moneys." Nowhere is there any provision whereby any one but the county may receive or enforce collection of the assessments or liens placed against benefited lands.

Looking at the law from a practical business standpoint, the conclusion seems plain that the law intends that the faith and credit of the county should be pledged in the issue of drainage bonds. To bring the best price and a ready sale, bonds must be issued by an

·obligor whose responsibility is readily ascertainable and undoubted. The financial standing and responsibility of a county is not difficult to ascertain, and it is security of high order as compared with a security given only by the assessments and liens on the lands benefited.

Prospective purchasers of bonds might well be turned away, if the law is that the only security is the assessments against benefited property, for the value of the lands upon which these are placed must be examined. This may involve great inconvenience and ex-pense. It is highly improbable that the legislature intended to jeopardize and hamper drainage work, now deemed of such public importance, by not providing the best of securities available from which to raise the requisite funds. We hold that in the purpose, in the import of the language in its provisions, and in the practical view of the drainage act of 1905 and its amendments, the legislative intent is manifest that bonds issued thereunder are the direct obligation of the county.

The only basis for a contrary holding is the provision in the law that most, if not all, the funds expended for the improvement are to be refunded to the county by assessments against the property specially benefited. This is the view taken by the courts in Indiana. See decisions cited and necessarily adopted in Braun v. Board of Commissioners of Benton County (C. C.) 66 Fed. 476. However, the weight of authority is that such provision in the law does not narrow the security of the bonds to that given on the lands assessed for benefits, but that the governmental body upon which the duty is cast to issue the bonds thereby pledges its full faith and credit for their payment directly and generally, and not in any restricted sense. State v. Commissioners, 37 Oh. St. 526; Millard v. Adams, 136 App. Div. 669, 121 N. Y. Supp. 504; State v. Shawnee, 83 Kan. 199, 110 Pac. 92; Fowler v. City, 85 Wis. 411, 54 N. W. 800.

2. Little need be said on the second question. This court has already held drainage acts constitutional on the ground that projects thereby contemplated are for the public health and welfare. Lien v. Board of County Commissioners, 80 Minn. 58, 82 N. W. 1094,

holding valid chapter 97, p. 148, Laws 1887, an act of similar purpose to the act under consideration. State v. Board of County Commissioners, 87 Minn. 325, 92 N. W. 216, 60 L.R.A. 161, upheld the drainage act (chapter 258, Laws 1901), of the same import, as constitutional. The construction of drainage ditches being the exercise of a governmental function, delegated to the counties of the state for the promotion of public health, welfare, and utility, there ought to be no doubt that all the property within the county may be subject to taxation to provide the funds therefor. That most, or part, of this burden is laid on property specially benefited, is no reason why the owners of other property thus relieved should have any warrant for claiming that the law violates any of their constitutional rights. In other words, the legislature may provide different taxing districts within a county, and is not bound by governmental subdivisions therein. Maltby v. Tautges, 50 Minn. 248, 52 N. W. 858.

Order affirmed.

PHILIP E. BROWN, J., being absent on account of illness, took no part.