## J. W. PIKE v. CITY OF MARSHALL AND OTHERS.[1]

### August 27, 1920.

### No. 22,043.

**City of fourth class—pavement of streets—act of 1919.**

Chapter 65, Laws 1919, authorizes the city council of a city of the fourth class, not having a home rule charter, to contract for the pavement of streets and to issue certificates of indebtedness to pay the cost thereof without submitting the proposition of such issue to the electors of the city for approval or rejection.

Action in the district court for Lyon county to restrain defendants from proceeding with the performance of a contract to improve certain streets in defendant city, from levying an assessment therefor upon abutting property and from issuing certificates of indebtedness or other obligations of the city in payment of the improvement. From an order, Olsen, J., sustaining defendants' demurrer to the complaint for the reason that it did not state facts sufficient to constitute a cause of action, plaintiff appealed. Affirmed.

*James V. Williams,* for appellant.

*Douglas, Kennedy & Kennedy* filed a brief as amici curiae.

*James D. Hall,* for respondents.

[1] Reported in 178 N. W. 1006.

HOLT, J.

The appeal is from an order sustaining a demurrer to the complaint. The action is to enjoin the city of Marshall and its officers from paving certain streets. The complaint alleges that plaintiff is a taxpayer in the city of Marshall, a city of the fourth class, organized under the laws of this state; that the city council has properly passed resolutions authorizing certain streets in the city to be paved, and all the steps prescribed by chapter 65, p. 62, Laws 1919, have been taken to make the improvement, including the letting of the contract therefor to the defendant Fielding & Shipley, a corporation; that unless restrained the cost of the improvement, except the paving at the street intersections, will be assessed upon abutting property; that there is not money in the city treasury to pay for the paving at street intersections and the cost thereof, to wit, $35,000, will be assessed as a general tax against the property subject to taxation within the city; that unless restrained the city will issue certificates of indebtedness to provide the means for paying the contractor for such paving, as provided in said chapter 65, and that no election has been held submitting the issuance of such certificates to the legal voters of the city, as required by chapter 10, G. S. 1913 (particularly sections 1854 and 1855). There is no allegation that the city has a home rule charter; it is conceded that it has not.

The question to be determined is whether the governing body of a city of the fourth class, not under a home rule charter, can pave its streets and issue certificates of indebtedness to provide the funds for such improvement, without the same being authorized by the electors at a duly called election. The same arguments now presented on this proposition were made in Lodoen v. City of Warren, supra, page 181, 174 N. W. 741, but it was not necessary to there decide it, for the city of Warren had a home rule charter, and as to such cities the act was held unconstitutional. However, it was decided that the act was valid as to all other cities of that class, so that now it is a matter merely of construing its requirements.

In section 783, R. L. 1905 (G. S. 1913, § 1854), found in chapter 10 relating to Public Indebtedness, is this inhibition: "No bonds of any municipality shall be issued without the approval, first obtained, of the majority * * * of the voters * * * voting at a special or general

election." There are two exceptions not here important. The certificates of indebtedness to be issued under chapter 65, p. 62, Laws 1919, may be conceded the equivalent of bonds. Christie v. City of Duluth, 82 Minn. 202, 84 N. W. 754. The sweeping inhibition referred to in section 783 is somewhat modified in respect to the subjects named in section 784 (G. S. 1913, § 1855), reading: "When the governing body of any municipality shall have resolved that it is expedient to borrow money for one or more of the purposes hereinafter named, and to an amount which will not increase its net indebtedness beyond the limit fixed by law, and a proposal so to do, if required by law, shall have been duly submitted to and approved by the voters thereof, the bonds of such corporation may be issued and sold, conformably to the provisions of this chapter." One of the purposes named in the section is the construction of pavements.

The legislature may authorize a municipality to create bonded indebtedness either by a popular vote, or through their duly elected representatives—in this case the city council, its governing body. The one method, when properly authorized, is as legitimate as the other. Courts are not concerned as to which one is used. Wall v. County of St. Louis, 105 Minn. 403, 117 N. W. 611.

Chapter 65, p. 62, Laws 1919, does not in terms require submission of the question of pavement construction or of borrowing the funds to pay therefor to the electors, and hence section 784 does not directly call for an election in order to carry out the improvement.

It is to be borne in mind that, at the time of the enactment of the chapter on Public Indebtedness (chapter 10), few if any villages or cities of the fourth class had any street pavements. The problem of paving the main streets in and the state highways through the villages and smaller cities is a recent necessity largely occasioned, perhaps, by the ever increasing automobile traffic. The law under consideration seems designed to facilitate the construction of this new necessity, and the procedure is in line with the provisions in respect to paving obtaining in cities of the first class. It is a complete workable law, prescribing the steps to be taken in detail from the inception of the determination to pave to the providing for the payment of the cost. The ultimate expense is to be borne by abutting owners, except that the council may pay for the cost of a payment across intersecting streets and alleys, and one-half the cost of

a pavement opposite any public park or municipal property out of the general road fund, if any there be, or out of the general road fund of the city. The improvement can only be made upon the adoption of a resolution to that effect by a majority vote of the council, after a meeting at which all property owners, whose property is liable to be assessed therefor, have been notified to be present, by a notice of such meeting published in the official newspaper. By resolution, owners of abutting property may be compelled to lay the necessary sewer and water pipes before the work is begun. It provides for plans and specifications of the work and for bids. It authorizes the council to let the contract to the lowest responsible bidder, and permits certain payments on the contract during the progress of the work upon estimates. The levying of the assessments against the property benefited is prescribed, including those against the property owned by the county or school district, and also for supplemental assessments or corrections. An appeal to the district court is provided. And finally section 9, p. 64, of chapter 65 gives the council authority to issue certificates of indebtedness as may be necessary to defray the expense incurred, the certificates to extend over a period of 20 years, and bearing interest at not to exceed 6 per cent per annum; the proceeds from the sale of the certificates to go into a special fund, and the amount of such outstanding certificates are not to be included in determining the city's "net indebtedness" under the provisions of any applicable law.

The provision, giving affected property owners an opportunity to be heard before the city council is authorized to act upon a paving proposition, seems to negative the idea that a submission to the voters of the propriety of financing the project was contemplated. In this respect chapter 65 follows closely the drainage law and the so-called Elwell law. It is also to be remembered that since the earliest times in this state the keeping of its streets in proper condition for travel has been laid upon every city of whatever class as one of its general duties. Improvement of the streets of a city is not in the same category with such undertakings as providing armories, waterworks, or lighting systems or any other permissible business venture which a city may or may not elect to enter upon, and the funds for which must be provided wholly by general taxa-

tion. In the matter of pavement, only a fraction of the cost comes from such taxation, the bulk thereof being borne by the abutting property. It would be unreasonable in this day to suppose the legislature intended a city or village to incur the trouble and expense of an election every time it became necessary to pave a block or two of its streets.

That the absence from said chapter 65 of language excepting it from the operation of section 783, R. L. 1905 (G. S. 1913, § 1854), does not signify an intention to subordinate it thereto, is abundantly demonstrated by examining the following acts passed since the enactment of said section 783, and which undoubtedly authorize city councils to issue and sell bonds without obtaining the electors' consent, viz.: Chapters 16, 45, 46, 117, 149, 181, 242, 295, 300, 304, 349 and 461, pp. 17, 39, 40, 131, 174, 232, 333, 422, 429, 435, 500, 669, Laws of 1913; cc. 14, 214, 220 and 266, pp. 17, 315, 320, 369, Laws 1915; cc. 16, 93, 99, 102, 114, 199, 349, 368, 373 and 379, pp. 29, 113, 123, 126, 141, 286, 494, 526, 531, 536, Laws 1917; cc. 6, 41, 215, 274 and 524, pp. 9, 37, 211, 284, 731, Laws 1919. A number of these acts, no doubt, affect only the city of Minneapolis, but under none was an election held or thought necessary, although no language in the act excepts it from the operation of said section 783. By the same legislatures other bonding statutes were enacted wherein elections were provided for, or some other check imposed upon the governing body of the municipality, as, for instance, chapters 242 and 303, pp. 333, 431, Laws 1913; cc. 15, 258 and 420, pp. 26, 367, 628, Laws 1917; cc. 265 and 438, pp. 276, 511, Laws 1919.

Cases on repeals by implication are cited and discussed, but that question is not involved, as we view it. No intent to repeal section 783, R. L. 1905, can be spelled out of chapter 65, p. 62, Laws of 1919. The former section remains intact, but is not called into operation under the provisions for issuing certificates of indebtedness pursuant to the later act, which is full and complete in itself. The statute limiting the indebtedness to be incurred by a municipality is upon a somewhat different footing from one which selects the agency or method for contracting a municipal debt. The limit of indebtedness fixed by the legislature may not be exceeded, except by the legislature's express sanction, no matter whether the indebtedness is contracted by the governing body or by

146 M.—27.

the majority vote of the electors of the municipality. Statutes authorizing the issue of drainage bonds have not been questioned on the score that no election to approve such issuance had been had. Van Pelt v. Bertilrud, 117 Minn. 50, 134 N. W. 226. And no such objection was raised in Murray v. Smith, 117 Minn. 490, 136 N. W. 5, 40 L.R.A.(N. S.) 173, Ann. Cas. 1913D, 548, or in Alexander v. McInnis, 129 Minn. 165, 151 N. W. 899, relating to the Elwell law. The last case answers sufficiently the claimed contradictions in this law, in that, although the certificates issued are not to be counted in the net indebtedness of the municipality, the whole thereof will not be paid from the assessments levied against benefited property.

The case of Beck v. City of St. Paul, 87 Minn. 381, 92 N. W. 328, was decided on the proposition that the bonds proposed to be issued for the erection of an armory exceeded the limitation of the indebtedness imposed upon cities of the first class under home rule charters. The statute there involved was not a full and detailed enactment like the one before us.

Our conclusion is that chapter 65, p. 62, Laws of 1919, should be construed to authorize the city council of a city of the fourth class, not having a home rule charter, to issue certificates of indebtedness to provide funds for the construction of a pavement without submitting the question to the electors for approval.

The order is affirmed.