MARY B. LESLIE v. CITY OF WHITE BEAR LAKE.[1]

July 15, 1932.

No. 29,102.

*Joseph F. Cowern,* for appellant.

*Harvey O. Sargeant,* for respondent.

*Junell, Oakley, Driscoll & Fletcher* and *Charles B. Howard,* amici curiae, filed a brief in support of the contention of appellant.

WILSON, C. J.

Defendant appealed from an adverse judgment granted upon the pleadings.

Plaintiff, as a resident and taxpayer in the city of White Bear Lake, prosecutes this action to restrain the city from issuing re-

[1]Reported in 243 N. W. 786.

funding bonds and from levying general taxes for the payment of certain sewer warrants.

The city intended to issue refunding bonds in payment of sewer warrants under authority of G. S. 1923 (1 Mason, 1927) § 1893, et seq. and § 1946, as amended by L. 1929, p. 480, c. 351, and L. 1931, p. 175, c. 155. See Mason, 1931 Supp. §§ 1946-17 to 1946-33. The amount of such warrants is $242,500. Before the city is authorized to issue bonds under these laws the bonded, judgment and floating indebtedness of the city must exceed 25 per cent of the assessed valuation of all taxable property therein, exclusive of moneys and credits.

The sole question for our determination is whether these sewer warrants are general obligations of the city. If so, the bonds may issue; otherwise not.

G. S. 1923 (1 Mason, 1927) § 1893, provides:

"All moneys collected on any such special assessments, other than to pay for sewer or treatment plant outlets, shall constitute a fund for the payment of the cost of the improvement in the district for which such assessment was made * * *. It shall be the duty of the city, * * * to pay such warrants and interest coupons as they may mature, out of the proper sewer district fund, * * *. If any such warrants shall become due, or any such interest shall become due on any such warrant, when there are no funds to pay the same, the city * * * council is hereby authorized to effect a temporary loan for the payment thereof."

There have been three issues of these warrants. In the resolutions authorizing the first and second issues it was said:

"If any warrant or the interest thereon falls due when there are no funds as the proceeds of said assessments, to pay the same, to provide the money for such payment by the use of the city's credit therefor."

The resolution authorizing the third issue provided:

"If any warrant or the interest thereon falls due when there are no funds to pay the same, to effect a temporary loan for the payment thereof by the use of the city's credit to the full extent that said city and council are now or may hereafter be authorized by law."

The resolutions also pledge the city seasonably to collect the assessments levied for the cost of the improvement and to apply the same to the payment of the warrants issued in anticipation of their collection.

Obviously these resolutions intended that the city do only that which was authorized by said § 1893. They could not do more.

The warrants, among other things, contain these provisions:

"This warrant is one of a series of warrants issued by said City pursuant to the provisions of Sections 1880, ff, General Statutes, Minnesota, 1923, and the acts amendatory thereof in anticipation of the collection of assessments duly levied for the construction of sewers in said City, and is payable out of a fund designated as 'Fund of Sewer District No. 1,' constituted of assessments for the payment of the cost of said improvement.

"The said City of White Bear Lake, Minnesota, pledges the exercise of the utmost good faith and diligence in the collection of said fund and its application to the payment of said warrants and interest, and agrees that if this warrant or any interest thereon shall become due when there are no funds in the City's treasury with which to pay the same, it will provide the money for such payment by the use of its credit as permitted by law."

The statute is a part of the contract involved in the warrants. The legislature has provided the machinery for collecting the special assessments and keeping the money in a special fund to be used only for the payment of the warrants. Indeed, the legislature has given the city authority to make a temporary loan when the sewer fund is depleted. Presumably this authority was expected to be exercised only in the event that the city officials at the time considered it safe, practicable, and advisable so to do.

The sewer system embraces but a portion of the corporate territory. The cost of the disposal plan and the outlet, which does not connect with a public drain, is included in the warrants.

It seems plain from the statute, from the resolutions involved, and from the warrants themselves that the only obligation assumed by the city was "the exercise of the utmost good faith and diligence in the collection of said fund and its application to the payment of said warrants and interest."

The difficulty now involved is "due to present adverse economic conditions coupled with the crushing burden of taxation and special assessments, * * * and the resulting flood of delinquencies."

This is a situation apparently not contemplated by the contract. The theory of paying for such improvements by special assessments against the property benefited contemplates that the benefits to valuable property are of such character that loss from delinquencies is remote. It cannot reasonably be urged that the purchasers of these warrants ever understood that they could call upon the city for payment other than from the funds derived from the special assessments. It would seem that the intention of all interested parties was to the contrary. We think the qualified power given to make a temporary loan was not for the purpose of meeting a complete breakdown in the payment of the assessments, but rather to bridge the span between maturity of the warrants and the maturity of the special assessments.

We construe the transaction and contract involved in these warrants and the payment thereof as wholly dependent upon the money derived from the special assessments. The language of the statute repels the inference that this indebtedness was to be paid by general taxation. It follows that they are not a part of the general obligations or legal indebtedness of the city.

The resolutions stated that the sewer fund "shall constitute the primary fund for the payment of the sewer warrants." Upon such statement the argument is made that it is not said that this fund is "the only fund" for such payment. But the statute contemplates that the payments shall be made from the special assessments. It

is also argued that the city may make the temporary loan "when there are no funds," which it is said means when the city has no money and not "when there are no funds in the sewer fund." We do not agree. The statutory reference to "no funds" is in § 1893, and is direct reference to the sewer fund.

We think the case of Van Pelt v. Bertilrud, 117 Minn. 50, 134 N. W. 226, wherein bonds, not warrants, are involved, is not controlling. There the whole text, statute, and plan disclosed an intention not present in this case.

G. S. 1923 (1 Mason, 1927) § 1881, classifies sewer systems; and, while the pleadings referred to this sewer as a general sewer, the briefs would indicate that it is a district sewer. Section 1884 states that the cost of constructing a general sewer, plant, or plants for treating the sewage therein or the securing an outlet therefor shall be paid out of the sewer fund, if any, or if there is no sufficient sewer fund, then out of the general revenue fund of the city. But a sufficient answer is that the city officials did not see fit to do so, but on the contrary they included the full amount of such costs in the assessments against the property in the sewer district.

Affirmed.