## OSCAR M. BERGMAN v. VILLAGE OF GOLDEN VALLEY.[1]

October 8, 1937.

No. 31,356.

*Hyman Edelman,* for appellant.
*Fagerstrom & Jaroscak,* for respondent.

[1]Reported in 275 N. W. 297.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order denying its alternative motion for amended findings or if that be denied for a new trial.

The facts are not in issue. The sole difficulty hinges upon the law applicable thereto.

In 1931, upon appropriate petition duly made, an extensive area within the platted portion of defendant village was added to the then functioning watermain system. The village council duly adopted a resolution under the provisions of L. 1921, c. 425, 1 Mason Minn. St. 1927, §§ 1918-1 to 1918-14, inclusive, establishing the petitioned improvement, and in conformity with that act levied assessments upon the benefited property for its entire cost. To finance the project and in strict conformity with that act, it issued its certificates of indebtedness. In the resolution for the issuance and sale thereof the following paragraph appears:

"BE IT RESOLVED that the full faith, credit and resources of the Village shall be and they are hereby irrevocably pledged to provide money for the prompt and full payment of the principal and interest on each of said certificates of indebtedness as such principal and interest become due."

In the advertisements for bids for their sale this paragraph appears:

"The Village will furnish the executed certificates and the approving legal opinion of Junell, Oakley, Driscoll & Fletcher, both without cost to the purchaser."

The resolution set forth the form of the certificates to be issued. Therein the village council represented that "it [the village] is indebted and for value received promises to pay to the bearer" the principal and interest therein specified. Also, that "to provide moneys for the payment of said principal and interest as the same respectively fall due the full faith, credit, and resources of said Village have been and are irrevocably pledged. * * * all acts, conditions and things required by the Constitution and laws of the State of Minnesota to have been done, to have happened, and to

have been performed precedent to and in the issuance of this certificate of indebtedness, have been done, have happened and have been performed, in regular and due form, time and manner as required by law. * * * the total indebtedness of said Village outstanding on the date thereof, including this certificate of indebtedness, does not exceed any statutory or constitutional limitation of indebtedness." The written opinion of the firm of lawyers mentioned in the advertised notice was duly furnished. That opinion states: "In our opinion said issue is valid and a legal obligation of said Village of Golden Valley, Hennepin County, Minnesota, and all the taxable property in said Village is subject to the levy of a tax to pay the same."

Plaintiff as the holder of three of the certificates which had matured brought this action to recover thereon and prevailed in the court below. Defendant has appealed, being of the view that these certificates are special obligations to be paid only out of the fund created by virtue of the special assessments.

Decision, therefore, hinges upon, as stated by defendant, "whether the obligations involved in this suit are special assessment bonds payable [only] out of the assessments levied against the benefited property, or whether the same are general obligation bonds payable by levying of ad valorem taxes against all the [taxable] property" of the village. In its behalf it is urged that the chapter under which the proceedings were had contemplates a limited liability rather than a general one.

Counsel are in agreement that § 10 of the act is the authority to which we must look for the answer. That section, 1 Mason Minn. St. 1927, § 1918-10, reads as follows:

"After a contract or contracts for the making of any such improvement shall have been entered into by any city of the fourth class, or any village or borough, it may, acting through its Council, issue its certificates of indebtedness in such amount as may be necessary to defray in whole or in part the expense incurred or to be incurred in making any such improvement. The word 'expense' shall be construed to mean and cover every item of cost of such

improvement from its inception to its completion, and all fees and expenses incurred or to be incurred in pursuance thereof. Such certificate shall be payable in annual installments as near equal in amount as conveniently may be, over a period not exceeding twenty (20) years from their date, shall bear interest at a rate not to exceed six (6) per cent, payable annually, or semi-annually, which interest may be evidenced by appropriate coupons and shall be in such form and denominations, all as the Council shall by resolution determine, and shall be signed by the mayor and countersigned by the clerk. A separate special assessment fund shall be provided for each improvement and the proceeds from the sale of any certificate issued on its account shall be placed in such fund. The Council shall provide moneys for the payment of the principal and interest of said certificates, as they severally mature, which moneys shall be placed in such fund and into such fund shall also be paid all moneys received from the payment of any liens created under the provisions of this act. And the Council shall pay the principal and interest of any such certificates out of any funds in the treasury when the moneys on hand in the appropriate special assessment fund are insufficient to meet the payment of the principal or interest when the same matures, but the fund from which such moneys have been taken or used for the payment of such principal or interest shall be replenished with interest at the rate of six per cent per annum from the collection of unpaid assessments on account of such improvements.

"The amount of any such certificates at any time outstanding shall not be included in determining any such municipality's net indebtedness, under the provisions of any applicable law."

It is to be noted that under this section provision is made for the governing body of the municipality making the improvement to "issue *its* certificates of indebtedness in such amount as may be necessary to defray *in whole or in part* the expense incurred" in making the improvement; that the certificates "shall be in such *form* and denominations" as the council shall by resolution determine. Further, that the governing body *"shall provide* moneys for

the payment of the principal and interest of said certificates, as they severally mature, which moneys shall be placed in such fund and into such fund shall *also* be paid all moneys received from the payment of any liens created under the provisions of this act." Significant too is the language employed in the last quoted paragraph of § 10. If the "amount of any such certificates" is not to be included in determining the debt limitation of the municipality as a general obligation, inclusion of the quoted paragraph would be wholly unnecessary, in fact, superfluous. See Woodbridge v. Duluth City, 57 Minn. 256, 59 N. W. 296.

Comparing the statute here involved with the drainage act considered by this court in Van Pelt v. Bertilrud, 117 Minn. 50, 134 N. W. 226, leaves no doubt that the case just cited supports plaintiff's position. Unless that case is now to be limited, the validity of these certificates as general obligations cannot be doubted. In that case, as in this, the contracts for the construction of the improvement were required to be made in the name of the municipality. The contractor's bond ran to it. The bonds to be issued in the Van Pelt case [117 Minn. 52] were authorized "to defray, in whole or in part," the expense of the improvement, exactly the same as here. There the county commissioners were required to "provide moneys for the payment of the principal and interest" of the bonds. Only the county had authority to receive or enforce collection of the assessments or liens placed against the. benefited property. And there, as here, the lien in favor of the municipality against benefited property does not narrow the security of the bonds but rather and only is a means for the reimbursement of the municipality when and as the special assessments are collected.

Even more in point with plaintiff's contentions as going to sustain the result reached below is Pike v. City of Marshall, 146 Minn. 413, 178 N. W. 1006. Comparing the act there involved with the one under consideration here can leave no one in doubt that the two are at least parallel. There a taxpayer sought to enjoin the issuance of obligations authorized by L. 1919, c. 65. The court there came to the conclusion that no election was necessary under that act; that the act authorized the municipality to create the bonded

indebtedness there sought. Nor can there be any doubt that the present act, as much as the act there construed, authorizes a municipality to create the particular obligations here involved. That the legislature may authorize a municipality to create bonded indebtedness either by public vote or through the duly elected representatives—in this case the city council, its governing body—is too well established to require further discussion. The cited case and the cases therein mentioned fully sustain that result.

We conclude that the result reached below is right and that the mentioned chapter authorizes the issuance of obligations of the type here involved and that such are general obligations of the issuing municipality. As this court said in the case of Pike v. City of Marshall, 146 Minn. 413, 417, 178 N. W. 1006, 1007: "It would be unreasonable in this day to suppose the legislature intended a city or village to incur the trouble and expense of an election every time it became necessary to pave a block or two of its streets." That being true respecting pavements, must it not be equally true respecting the extension of a block or two when it comes to water-mains for fire protection and other necessary and useful municipal purposes?

Leslie v. City of White Bear Lake, 186 Minn. 543, 243 N. W. 786, and Judd v. City of St. Cloud, 198 Minn. 590, 272 N. W. 577, are so clearly distinguishable that further reference to them is deemed unnecessary.

Order affirmed.